THE ISLE ROYALE LAND CORPORATION (LIMITED) v. GIL-
BERT R. OSMUN, SECRETARY OF STATE.

*Mining companies—Right of foreign corporation to do business in
Michigan—Articles of association—Constitutional law—
Mandamus.*

1. An *English* corporation organized to carry on a *mining* business,
and for *other* purposes *not* covered by Act No. 113, Laws of 1877,
revising the laws for the incorporation of *mining* companies in
this State, applied to the Secretary of State to have filed a copy
of its articles of association, under section 23 of said act (How·
Stat. § 4098), which authorizes *foreign* corporations, organized
for the *purposes* contemplated by said act, to carry on business
thereunder upon filing such copies, which application was denied,
and a *mandamus* was asked for to compel such filing.

   CAMPBELL, J., filed an opinion, concurred in by SHERWOOD, C.
J., favoring the *denial* of the writ, and holding that—

   *a*—If section 23 is intended to confer powers on *foreign* cor-
porations as such, it is not within the *title* ,or general *purpose* of
the statute, or of the constitutional provision (Art. 4, § 20);
and if it is designed to create a *distinct* class of Michigan corpora-
tions, it is equally open to objection.   (Art. 15, § 1.)

   *b*—It is also evident that said section, if valid, was designed to
reach no cases where the *powers* and *purposes* of the foreign
corporation were *different* from those of bodies incorporated
under the statute itself.

   *c*—Relator, as a corporation already organized under foreign
laws for the multifarious purposes named in its articles, cannot
obtain any legal standing by filing its papers under section 23 of
the mining law for the formation of corporations in this State,
without the subversion of settled.principles.

2. CHAMPLIN, J., concurred in *denying* the application, for the reason
that the statute does not contemplate that *foreign* corporations
may be empowered to carry on business *not* authorized by the laws
of this State to *domestic* corporations.

3. LONG, J., filed an opinion, concurred in by MORSE, J., favoring
the *granting* of the writ, and holding that—

   *a*—The *object* of Act No. 113 is plainly expressed in its title,
and the fact that foreign corporations might by the provisions
of section 23 file their articles of incorporation, and be placed on
the same footing as corporations organized under said act, does

not give it a double aspect; nor can it be said to embrace more than one object by reason of such provision.

*b*—Section 23 does not attempt to *create* a corporation, but provides for doing business in this State by corporations already created and existing under the laws of some other state or country, and places them upon the same footing with our own corporations, so far as the *right* to do business in this State is concerned.

*c*—The right of a *foreign* corporation to do business in Michigan is a matter *entirely* under the control of the Legislature, which may deny such right at any time, except that the denial must not amount to a regulation of commerce, interstate or foreign; and the *conditions* upon which foreign corporations may do business within this State *to this extent* are absolutely within the discretion of the Legislature.

*d*—The Secretary of State has no arbitrary power vested in him by the statutes of this State to reject the articles of association of a corporation, because in his judgment it is proposed to carry on a business not provided for by our statutes, especially when one or more of the objects for which the corporation is organized is permitted to be carried out by their express provisions.

*e*—If a corporation attempts to exercise powers, or carry on a business, not permitted by our statute, and such business is detrimental to the interests of the State or its citizens, a mode is pointed out to remedy the evil, but this power is not vested in the Secretary of State.[1]

4. The following propositions are summarized from the opinion of Mr. Justice CAMPBELL:

*a*—A corporation cannot be deprived of a *statutory* right by a State officer, and *mandamus* will lie to enforce a specific right granted to it.

*b*—While How. Stat. § 4080, requires duplicate original articles of association to be filed in the office of the Secretary of State and of the clerk of the county where the business office of the corporation is located, the *order* of such filing is immaterial.

*c*—Isle Royale county was attached to Houghton county for judicial purposes by Act No 16, Laws of 1885, and thereby became a part of Houghton county for every purpose, and attached to the county town, unless otherwise ordered by the board of supervisors under How. Stat. § 456.[2]

---

[1] See *Attorney General v. Lorman*, 59 Mich. 158 (head-note 3).

[2] This section gives the board of supervisors power to set off and organize an *unorganized* county so attached into a township, when it shall contain at least 18 resident freeholders and legal voters.

*Mandamus.* Submitted June 18, 1889. Denied July 11, 1889.

Relator applies for *mandamus* to compel the Secretary of State to file a copy of its articles of association under How. Stat. § 4098. The facts are stated in the opinion, as also the *points* of counsel passed upon by the Court.

*Alfred Russell* and *E. A. Gott,* for relator.

*S. V. R. Trowbridge,* Attorney General, for respondent.

CAMPBELL, J.   A *mandamus* is asked to compel the Secretary of State to file the articles of association of relator, under section 23, chap. 123, How. Stat., being Act No. 113, Laws of 1877, entitled—

" An act to revise the laws providing for the incorporation of companies for mining, smelting, and manufacturing iron, copper, silver, mineral coal, and other ores or minerals, and to fix the duties and liabilities of such corporations."

The preliminary question of jurisdiction presented by respondent requires no attention.   If relator is given any right by statute, no executive officer can deprive it, and when it is a specific right *mandamus* will lie to enforce it.

The section in question here is as follows:

" Foreign corporations, organized for the purposes contemplated by this act, upon filing copies of their charter or articles of incorporation, as provided in section five, may carry on business in this State, and shall enjoy all the rights and privileges, and be subject to all the restrictions and liabilities, of corporations existing under this act."

Relator applied to the Secretary of State to have filed a copy of its articles, but he refused to file them as not authorized by law.   Upon the return to the order to show cause it was claimed that this section is invalid, and, furthermore, that, if valid, relator does not come within it.

Before proceeding to the other questions, it may be noted that the relator's petition sets up an incapacity to file the

papers with the county clerk, because Isle Royale has become entirely depopulated, and has no county organization. It is not necessary, under section 5 of the statute, to file the articles in the county first.     Duplicate originals must be filed, but not in any particular order.     But it seems to have been overlooked that the Legislature in 1885 attached Isle Royale county to Houghton county for judicial purposes. Laws of 1885, p. 13.     By section 455, How. Stat., such annexation makes Isle Royale a part of Houghton county for every purpose, and attaches it to the county town, unless otherwise ordered by proper authority.     Section 456.

Upon the argument counsel for relator claimed that the only paper to be filed was what is denoted as the " Memorandum of Association," which is a brief document of a very general character.     But, as certified, it is accompanied by "Articles of Association," which, while connected with the memorandum, form the real agreement of the parties, and must be so regarded.     The statute requires these articles, and they are the only source of knowledge in any way corresponding with the charter or articles under which corporations are organized.     The memorandum and articles were executed at the same time, and belong together.     We have not been furnished with references to the English statutes, which would no doubt explain why the papers are in two parts.     How far the English statutes authorize such incorporations we shall not inquire at present, but shall assume the articles are within some English law.

The only inquiry now before us is *not* how far such an English corporation can go outside of any Michigan statute, but how far it can act under the statute now before us, and whether this particular corporation can file its articles in the State department, and become vested with the statutory powers.

The statute in which section 23 is inserted is one which is confined by its title to providing for the incorporation of

companies, and defining the functions of bodies so incorporated. It was framed under Article 15, § 1, of the Constitution, which provides that—

"Corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes."

And it must be also governed by Article 4, § 20, which declares that—

"No law shall embrace more then one object, which shall be expressed in its title."

This section has been applied by our decisions to multifariousness in the creation or amendment of general corporation laws. *Skinner v. Wilhelm*, 63 Mich. 568 (30 N. W. Rep. 311); *People v. Father Matthew Soc.*, 41 Id. 67 (1 N. W. Rep. 931). And in *Mok v. Det., etc., Association*, 30 Mich. 511, a statute which authorized bodies for one purpose to be incorporated, with some modifications, by reference to a previous statute on a similar subject, that itself provided that corporations for building and leasing might be organized under the provisions of the statute—which in its revised form is now before us—concerning companies for mining and manufacturing metals and mineral products, was held void for similar reasons.

The purpose of the constitutional restriction requiring corporations to be created under general laws has always been understood as meant to put all corporations for similar purposes under the same conditions as to organization, powers, and privileges. In *Green v. Graves*, 1 Doug. 351, the clause in the old Constitution requiring a two-thirds vote for all acts of incorporation was held to exclude general acts for incorporation, on the ground that it was expected that the merits as well as incorporation of each body were to be investigated. And a general law under our present Constitution is supposed to contain all the conditions deemed proper for any corporation, and to keep all of a sort under the same conditions.

Under our Constitution there cannot be any Michigan corporation that does not get its being and the conditions of its existence from the laws laid down for such corporations by the Legislature of Michigan. It would be contrary to every rule of construction for our Legislature to delegate this power to other states or countries, or to other bodies, and to declare that any company which shall be created under the will or rules of such other authority shall be accepted as a corporation under the laws of this State. The method of organizing, the extent and conditions of creating, holding, and transferring stock, the authority and constitution of the governing body, and the powers and functions of the corporation, and of its constituent members and bodies, are all matters of importance. It is equally important to know and fix the responsibilities, civil and criminal, public and private, of the corporation and its members.

If section 23 is intended to confer powers on foreign corporations as such, it is not within the title or general purpose of the statute or of the constitutional provision. If it is designed to create a distinct class of Michigan corporations, it is equally open to objection. The Constitution provides that corporations may be "formed" under general laws. This certainly contemplates a uniform rule adopted by law for organizing them. It cannot be made to fit every form and every kind of organization made outside of our jurisdiction. In most of our states special charters may be adopted. The laws of foreign countries are equally varied, with the additional difficulty of construing systems with which we are not acquainted, and of prosecuting corporate misdeeds with no power of enforcing our forfeitures. It is hardly insisted that this English corporation can by any such simple process as filing its English articles become metamorphosed into a Michigan company, when a very large share of its methods, as well as of its functions, are not within any of our statutes.

It is also evident that section 23, if valid, was designed to

reach no cases where the powers and purposes of the foreign corporation were different from those of bodies incorporated under the statute itself. The Secretary of State based his principal objection to filing these papers on the fact that, instead of being organized for mining and treating metals, ores, and minerals, those were but partial, and to some extent incidental. This company is called a "land corporation," and its purposes include every incident of a proprietary, colonial occupation, including expressly the development of "mineral, agricultural, grazing, and other resources." Provision is made for stock-breeding and farming, for buying and selling live and dead stock, for making all manner of urban and rural ways and improvements on land and water, for organizing other corporations for any of the purposes named, for investing in the stock of all kinds of private corporations, and in domestic and foreign state and government securities, to create and deal in negotiable paper, to buy up other enterprises, and to enter into joint arrangements, and many other matters not necessary to specify. The general outline of the corporate powers is that of a colonizing and trading company for general purposes, much more than for mining and its associate purposes.

There seems to be authority in the articles for the directors to get up corporations, and there is apparently no reason why a company or companies should not be got up from the beginning in conformity with our statute. But this company, as a corporation already organized under foreign laws for the multifarious purposes named in its articles, cannot obtain any legal standing by filing its papers under section 23 of the mining law for the formation of corporations in this State, without the subversion of settled principles.

There is no need, under the present record, to examine or discuss any of the questions lying outside of the statute which were urged on the hearing. They are not presented in shape for decision, and it might be dangerous to deal with

them theoretically, or without more definite presentation and handling.

The *mandamus* should be denied.

SHERWOOD, C. J., concurred with CAMPBELL, J.

CHAMPLIN, J.   The question presented in this application is whether we will compel the Secretary of State to file and record the articles of incorporation of relator. This we ought not to do, unless we are satisfied that under existing laws relator is entitled to have them filed and recorded.

The statute contemplates that foreign corporations may file and record their articles of incorporation, and thereby be permitted to carry on the business for which they are incorporated; but the statute does not contemplate that foreign coporations may be empowered to carry on business not authorized by the laws of this State to domestic corporations, and for this reason I concur in denying the application.

LONG, J., (*dissenting*).   I am unable to agree with my Brother CAMPBELL in this case.   The objections made by the Secretary of State to filing these articles of association are, *first*,—

That section 23, Act No. 113, Laws of 1877, under which relator claims the right to file and record its articles, is in conflict with section 20, Art. 4, of the Constitution of this State, which provides that no law shall embrace more than one object, which shall be expressed in its title.

The general purpose of the act is to revise the laws providing for the incorporation of companies for mining, smelting, and manufacturing iron, copper, silver, mineral coal, and other ores or minerals, and to fix the duties and liabilities of such corporations.   The sections of the act under which relator claims the right to file and record its articles with the Secretary of State are Nos. 5 and 23.   Section 23 provides:

" Foreign corporations, organized for the purposes. contemplated by this act, upon filing copies of their charter or

articles of incorporation, as provided in section five, may carry on business in this State, and shall enjoy all the rights and privileges, and be subject to all the restrictions and liabilities, of corporations existing under this act."

And it is provided by section 5 that—

" Before any corporation organized under this act shall commence business, the articles of association shall be executed and acknowledged in duplicate, and one of said articles shall be filed and recorded in the office of the Secretary of State," etc.

It cannot be said that the incorporation of section 23 into this act gave the act two objects. The object is plainly expressed in its title, and the fact that foreign corporations might by the provisions of section 23 file their articles of incorporation, and be placed on the same footing as corporations organized under the act, does not give it a double aspect; nor can it be said to embrace more than one object by reason of such provision. I therefore think this objection has no force.

The *second* objection of the respondent is—

That the relator is not organized under the general laws of this State, and that therefore section 23 does not come within the spirit and intent of section 1, Art. 15, of the Constitution of this State, which provides that " corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes."

This section does not attempt to create a corporation. It provides for doing business in this State by corporations already created and existing under the laws of some other state or country, and placing them upon the same footing with our own corporations, so far as the right to do business in this State is concerned.

Before this section became of force, in 1877, it had been the policy of this State since long before the adoption of the present Constitution to admit foreign corporations to do business within this State upon the same terms and conditions in

many respects as corporations organized within the State under our statutes. Any corporation existing outside of this State, whether organized under the laws of the state, of the Union, or.of a foreign country, may enjoy the privileges of conducting its corporate business within this State by comity, unless forbidden by some affirmative action of the State indicating a contrary policy. *Thompson v. Waters,* 25 Mich. 214. And this State has not only not forbidden foreign corporations to do business here, but has affirmatively declared that they may carry on their business here, and make contracts within the State, and may protect their rights in the courts of the State, and has expressly put foreign corporations on the same footing as domestic ones for more than 40 years; and, as was said by Mr. Justice SHERWOOD in *Emerson v. Machine Co.,* 51 Mich. 7 (16 N. W. Rep. 183),—

"A very large portion of the business of Michigan is now done and managed by foreign corporations, many of them having local or branch offices and places of business in our midst."

The right of a foreign corporation to do business here is, however, a matter entirely under the control of the Legislature, and the Legislature may deny the right at any time, except that the denial must not amount to a regulation of commerce, interstate or foreign; and the conditions upon which foreign corporations may do business within the State to this extent are absolutely within the discretion of the Legislature. *Hartford Fire Ins. Co. v. Commissioner of Ins.,* 70 Mich.——(38 N. W. Rep. 482), and cases there cited.

The *third* reason given by the respondent for refusing to file and record these articles of incorporation is—

That in his opinion the relator is not a foreign corporation, organized for the purposes contemplated by section 23, Act No. 113, Laws of 1877.

One of the objects of the organization was to carry on a mining business. This business comes within the terms of

the act, and the fact that its articles provided for the carrying on of some other business, not specified in or provided for by the act, gave the Secretary of State no right to refuse to file and record its articles.

The Secretary of State has no arbitrary power vested in him by the statutes of this State to reject the articles of association of a corporation, because in his judgment it is proposed to carry on a business not provided for by our statutes, especially when one or more of the objects for which the corporation is organized is permitted to be carried out by express provision of the statutes. If the corporation attempts to exercise powers, or carry on a business, not permitted by our statute, and such business is detrimental to the interests of the State or its citizens, a mode is pointed out to remedy the evil, but this power is not vested in the Secretary of State. I think the writ of *mandamus* should issue, compelling the Secretary of State to file and record these articles of association.

MORSE, J., concurred with LONG, J.