166:85 Fed 289

CHARLES C. FORD *et al.*

*v.*

THE CHICAGO MILK SHIPPERS' ASSOCIATION.

*Filed at Ottawa January 15, 1895.*

1. TRUSTS—*combination to regulate price of milk, unlawful.* An association formed for the purpose of regulating the price of milk sold by the members thereof in a particular city to retail dealers, which purpose is carried out by the concurrent action of the members and the association, is within the act of June 11, 1891, prohibiting pools, trusts and combinations.

2. SAME—*the incorporation of those offending will not render acts legal.* The incorporation of a body of milk shippers who have combined to fix the price of milk, in violation of the act of June 11, 1891, to prevent pools, trusts and combinations, will not render the combination legal, on the ground that the corporation cannot alone enter into a trust, as the acts of the corporation are those of the associated persons, as individuals.

3. STATUTES—*act of June 11, 1891, applies to corporation previously formed.* The act of June 11, 1891, forbidding pools, trusts and combinations to control the price of any commodity, applies to a corporation formed previous to its passage.

*Chicago Milk Shippers' Ass.* v. *Ford*, 46 Ill. App. 576, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding.

Appellee brought its action of assumpsit against appellants to recover for milk sold and delivered, the declaration containing the common counts, to which were pleaded the general issue and two special pleas, which substantially alleged that the plaintiff was a corporation organized and created for the purpose of regulating and fixing the price, amount and quantity of milk to be shipped and sold within the corporate limits of the city of Chicago to the city dealers and retail dealers, and pursuant to that purpose it became a party to an agree-

ment, undertaking, combination and confederation with certain persons named, and with divers other persons, to regulate and fix the price and the amount and quantity of milk to be shipped and sold within the corporate limits of the city of Chicago, and in pursuance of that unlawful agreement plaintiff sold and delivered to the defendant Charles C. Ford, a retail milk dealer, large quantities of milk at the price fixed and determined by the plaintiff and the other persons in pursuance of said unlawful agreement, whereby plaintiff was not entitled to recover, etc. To these pleas replication traversing the same was filed, and the case was tried on a stipulation of facts before the judge, without a jury.

The court was requested by the plaintiff to hold the following propositions, which were refused, and to which ruling plaintiff excepted:

1. "The court holds, as a proposition of law, that although the Chicago Milk Shippers' Association may have been an illegal corporation on April 15, 1891, in that it was a combination in restraint of trade, yet the contract between it and the defendants, who were not members of said corporation, having been fully performed, with the single exception of payment on the part of defendants to the plaintiff for milk delivered by plaintiff to them in October, 1891, is not affected thereby, and the plaintiff is entitled to recover from defendants the amount shown to be unpaid by the defendants to the plaintiff for the milk so delivered.

2. "The court holds, as a proposition of law, that an act entitled 'An act to provide for the punishment of persons, co-partnerships and corporations forming pools, trusts and combines, and mode of procedure and rules of evidence in such cases,' approved June 11, 1891, in force July 1, 1891, is, so far as it provides that 'any purchaser of any article or commodity from any individual or company transacting business contrary to the provisions of

this act shall not be liable for the price or payment of such article or commodity, and may plead this act as a defense to any suit for any such price or payment,' unconstitutional and void.

3. "The court holds that the original contract for the sale of milk by the plaintiff to the defendant C. C. Ford, and the written guaranty of payment for such milk, made by both defendants to the plaintiff, were valid contracts, in law, at the time they were made, to-wit, on April 15, 1891; and the court further holds, that the act of the General Assembly of Illinois, entitled 'An act to provide for the punishment of persons, co-partnerships or corporations forming pools, trusts and combines, and mode of procedure and rules of evidence in such cases,' approved June 11, 1891, in force July 1, 1891, in so far as it provides that 'any purchaser of any article or commodity from any individual, company or corporation transacting business contrary to any provisions of the preceding sections of this act shall not be liable for the price or payment of such article or commodity, and may plead this act as a defense to any suit for such price or payment,' does not prevent a recovery by the plaintiff in this cause, by reason of section 14, article 2, of the constitution of Illinois, which provides 'that no law impairing the obligation of contracts shall be passed.'

4. "The court holds, as a proposition of law, that the fixing of the retail price of any article by the board of directors of any corporation dealing in such article is not such a fixing of a price as is prohibited by any statute of the State of Illinois.

5. "The court holds, as a proposition of law, that the contract which forms the basis of this action was such a valid and subsisting contract at the time the act of the General Assembly of the State of Illinois, entitled 'An act to provide for the punishment of persons, co-partnerships or corporations forming pools, trusts and com-

bines, and mode      procedure and rules of evidence in such cases,' beca    ᵕ in force, to-wit, on July 1, 1891, that said law does not apply to this case, since said law, if applied, would impair the obligation of said contract, contrary to section 14, article 2, of the constitution of Illinois.

6. "The court holds, as a proposition of law, that an act entitled 'An act to provide for the punishment of persons, co-partnerships or corporations forming pools, trusts and combines, and mode of procedure and rules of evidence in such cases,' approved June 11, 1891, in force July 1, 1891, is unconstitutional and void."

At the suggestion of defendants' attorneys the following propositions of law were held:

1. "The defendant C. C. Ford submits to the court, and asks the court to hold as a proposition of law, upon the testimony shown in this case :   The plaintiff, at the time of the sale and delivery to the said defendant of the goods and merchandise, viz., a certain quantity of milk by the plaintiff sold to the defendant, was a corporation which, under the by-laws shown in evidence, had created, entered into and was a combination then existing for the purpose of regulating, fixing and establishing the price of milk to be sold within the corporate limits of the city of Chicago by producers, shippers and wholesale dealers to the city dealers and retail dealers, and also for the purpose of fixing and limiting the amount and quantity of milk to be supplied and sold within the limits of the city of Chicago by producers, shippers and wholesale dealers to the city dealers and retail dealers, and that the purchase by the defendant from the plaintiff of the milk, the price of which is sought to be recovered in this case, was made by the defendant pursuant to the purpose of such combination, and as a matter of law the court holds that the said combination existed for an unlawful purpose, and that the purchase by the defendant from the plaintiff of said milk was done in furtherance

of such unlawful purpose, and created no indebtedness for the recovery of which the law will afford any remedy, and that therefore the judgment of the court is for the defendants.

2. "The defendants submit to the court, and ask the court to hold, that, as a proposition of law, upon the testimony shown in this case, the plaintiff, at the time of the sale and delivery to the defendant C. C. Ford of the goods and merchandise, viz., a certain quantity of milk by the plaintiff sold to the said defendant, was a corporation which, under the by-laws shown in evidence, had created, intended and was a combination then existing for the purpose of regulating, fixing and establishing the price of milk to be sold within the corporate limits of the city of Chicago by producers, shippers and wholesale dealers to the city dealers and retail dealers, and also for the purpose of fixing and limiting, the amount and quantity of milk to be supplied and sold within the limits of the city of Chicago by producers, shippers and wholesale dealers to the city dealers and retail dealers, and that the purchase by the said defendant from the plaintiff of the milk, the price of which is sought to be recovered in this case, and the execution of the guaranty offered in evidence, were made by the defendants pursuant to the purpose of such combination, and as a matter of law the court holds that the said corporation existed at said time for an unlawful purpose, and that the purchase by the defendant from the plaintiff of said milk, and the giving of the guaranty offered in evidence and executed by both the defendants, was done in furtherance of such unlawful purpose, and created no indebtedness for the recovery of which the law will afford any remedy, and that therefore the judgment of the court is for the defendants."

To the holding of each of which propositions counsel for plaintiff excepted.

The circuit court entered a finding and judgment for defendants, and an appeal was prosecuted to the Appellate Court for the First District, where a finding of facts was made and a judgment entered reversing the judgment of the trial court. The facts found and judgment entered are as follows:

"This day came again the said parties, and the court having diligently inspected as well the record and proceedings aforesaid as the matters and things therein assigned for error, find, from evidence contained in said record, the following facts: That the appellant is a corporation organized and doing business in the manner shown by the constitution and by-laws hereto attached, which said constitution and by-laws are as follows:

" '*Constitution and General Laws of the Incorporated Joint Stock Association of Milk Shippers and Producers Tributary to the City of Chicago.*

ARTICLE I.—*Name and Objects.*

" 'Sec. 1. This company shall be known as the Chicago Milk Shippers' Association.

" 'Sec. 2. The objects of the incorporation of this association shall be to secure to the producer of milk a just return from the sale of the same; to rid the field of city distribution of irresponsible and dishonest dealers; to establish a central bureau of information, for the shipper's benefit, and to secure to the dealer of milk a pure, wholesome, honest quality of that product.

ARTICLE II.—*Jurisdiction and General Office.*

" 'Sec. 1. This association shall have jurisdiction over all districts shipping dairy products to the city of Chicago, in which local organizations of milk shippers have been or may hereafter be established, in accordance with the regulations hereinafter provided.

" 'Sec. 2. The general office of this association shall be permanently located in the city of Chicago and State of Illinois.

ARTICLE III.—*Capital.*

" 'Sec. 1. This association shall be incorporated with a capital of $100,000, which shall be divided into ten thousand shares of $10 each.

ARTICLE IV.—*Board of Directors and Duties.*

" 'Sec. 1. A board of directors, to consist of nineteen members, shall be chosen by ballot at the first regular meeting of the stockholders, and annually thereafter.

" 'Sec. 2. The board of directors shall hold its second regular meeting upon the last Tuesday of March, 1892, and annually thereafter. The board may be convened by the secretary at any time, whenever a request shall be made by five members of the same.

" 'Sec. 3. It shall be the duty of the board of directors, upon the day of its selection, to proceed to elect, by ballot, for the term of one year, a president, a secretary and a treasurer.

" 'Sec. 4. The board of directors shall, at the first regular meeting of each year, select an advisory committee, to consist of five members of said board, this committee, with the president of the association, to constitute the board of management.

ARTICLE V.—*Duties of the Officers of the Association.*

" 'Sec. 1. The president of this association shall preside over all meetings of the stockholders and board of directors. He shall convene the advisory committee whenever the affairs of the association require its attention. He shall recommend, for the approval of the board of management, a manager and an assistant manager, whenever, in his opinion, the business necessities of the association require the services of such assistants, and shall perform all the duties ordinarily attached to the position of president.

" 'Sec. 2. The secretary shall keep a full and complete record of all the business transactions of the association in all its relations with its membership, as well as with

all other parties doing business with it. He shall be present at all meetings of the stockholders and board of directors, and shall prepare minutes of the same. He shall give bond for the honest and faithful performance of his duties, in such amount as the board of directors may deem sufficient. The board of directors shall determine the compensation he shall receive for his services.

" 'Sec. 3. The treasurer shall keep a correct account of all the receipts and expenditures of the association, based upon his own record of the same, and confirmed by the books of the secretary. He shall secure vouchers for the payments of money made. His books of account, money on hand and vouchers shall be open to the inspection of the board of management at all times, and shall be promptly delivered to his successor in office. He shall give bond for the honest and faithful performance of his duties, in such amount as the board of directors may deem sufficient, and at the end of his official term make a full and complete report of the financial condition of the association. The board of directors shall determine the compensation that he shall receive for his services.

ARTICLE VI.—*General Laws—Capital Stock.*

" 'Sec. 1. The certificates of capital stock of the association shall be held by the secretary until paid for. All assessments as paid shall be endorsed thereon, and, whenever desired, the secretary shall furnish a duplicate receipt to the party in whose name the stock is recorded.

" 'Sec. 2. No transfers, sales or assignments of the capital stock of this association shall be made to any person who is not, or does not expect soon to become, a producer and shipper of milk.

" 'Sec. 3. In order to secure the full protection and benefits of the association, all members must own as many shares of its capital stock as they ship cans of milk per day, but it is expressly stipulated that in no case shall any stockholder own more than fifty shares of the same.

" 'Sec. 4. The board of management shall determine the number and limits of the periods for the delivery of milk. It shall, between the first and fifteenth of the month previous to the beginning of said periods, establish the price to be paid for milk, and shall give due and sufficient notice of the same to the members of the association and the city dealers.

" 'Sec. 5. City dealers will be required to pay the price ordered by the board of management, and in order' to secure compliance with this and other requirements of the association, all parties purchasing milk of the same will be required to give bonds, or furnish other security to the satisfaction of said board.

" 'Sec. 6. Of the market price, as determined by the board of management, the treasurer shall retain five cents upon each can of milk sold for each day. The fund so created shall be used to make up the loss in price which any member may sustain who is required, at any time, to sell his milk out of the city market for more than five days during any one month, and at a less price than that ordered by the board. The expenses of managing the association shall also be paid out of the above fund, and any balance remaining on hand at the end of the year shall be returned to the stockholders, in proportion to the number of cans shipped.

" 'Sec. 7. This association shall have supervision and authority over all milk consigned by any of its members to any stand or other place of reception within the corporate limits of the city of Chicago.

" 'Sec. 8. The stockholders at any stand or station holding not less than fifty shares of the capital stock of the association, may organize a local organization, to take charge of all local interests and to keep up close business relations with the central association. Stands holding less than fifty shares may, for purposes of organization, attach themselves to others nearest of access, so

that their combined shares represent the necessary number. Local associations shall have full power to adopt by-laws for their government, provided they do not conflict with any of the provisions of the constitution and general laws of this association.

" 'Sec. 9. Of any proposed amendment to the constitution and general laws of this association fifteen days' notice shall be furnished the members of the board of directors, and a two-thirds vote of the members present shall be necessary to secure the adoption of the same.'

"That appellant receives milk from various persons operating under and in connection with said association, all of whom are members of and stockholders in said association, and accounts to them for the same, and guarantees to them payment for milk so sold by said appellant to the customers of said appellant; that said association fixes and determines the price at which such milk shall be sold, precisely as set forth in said constitution and by-laws; that said appellant, on April 5, 1891, fixed the price of its milk for the ensuing six months as follows: During the months of May and June, seventy-five cents per can; during the months of July, August and September, eighty cents per can; and during the month of October, ninety cents per can, all in year 1891; and appellees agreed to said price, and to receive and pay for milk during said period of six months at said prices, at the date of the guaranty hereto attached; that all milk for which the appellant claims the right to recover in this suit was received by appellant from the persons so consigning the same in the manner aforesaid, and was delivered to the appellee C. C. Ford during the month of October, 1891, under and pursuant to the agreement and arrangement previously referred to, and a written guaranty accompanying the same, which forms a part of the admitted facts in this case, which said guaranty is as follows:

" '*Guaranty.*

CHICAGO, *April 15, 1891.*

" 'Whereas, Charles C. Ford is about to purchase and receive milk from the Milk Shippers' Association of the City of Chicago, a corporation doing business in the city of Chicago, in the State of Illinois : Now, in consideration of one dollar, and the furnishings of said milk, I, Elias Ford, for myself, and jointly with the said Charles C. Ford, do hereby guarantee the payment of the amounts due for milk on the fifteenth day of each month, for all milk furnished by said association during the preceding month.

CHARLES C. FORD, 1055 Adams.
ELIAS FORD, Niantic, Ill.'

"That all of said business between said appellant and appellees was done and transacted under and pursuant to the aforesaid regulations of said association, and that for and on account of the milk so sold and delivered under said arrangement during said month of October, there is yet a balance unpaid to the appellant by the appellees of four hundred and thirty-three dollars and eighty cents ($433.80); that the number of the stockholders (members) of said association is approximately fifteen hundred (1500), and was at the date aforesaid.

"Therefore it is considered by the court that the judgment of the said circuit court of Cook county, in this behalf rendered, be reversed, annulled and wholly for nothing esteemed, and that the said Chicago Milk Shippers' Association, appellant, have and recover from Charles C. Ford and Elias Ford, appellees, the sum of four hundred and thirty-three dollars and eighty cents ($433.80), as and for its damages ; and it is further considered by the court that the said Chicago Milk Shippers' Association, appellant, recover of the said Charles C. Ford and Elias Ford, appellees, its costs in this behalf expended in this court and also its costs in said circuit

court, to be taxed as part of the costs in this court, and that it have execution for its said damages and its said costs."

From that judgment the defendants appealed to this court.

E. A. Aborn, and H. T. & L. Helm, for appellants.

Cutting & Castle, for appellee.

Mr. Justice Phillips delivered the opinion of the court:

Stockholders in an association may enter into contracts with it, and deal with it in reference to contracts and agreements, acquiring the same rights and incurring like liabilities as strangers. (*Merrick* v. *Peru Coal Co.* 61 Ill. 472.) The right to enter into contracts and agreements thus existing, their effect and construction are the same as if made with other corporations or with strangers, and where void, by reason of a statutory provision, in the one case, would be so in another. As a general rule, no recovery can be had upon a contract made in violation of the express provisions of a public statute. Where an act is forbidden by a statute, no right arises under any agreement made in carrying out such forbidden act, as no legal right exists to do that which is declared illegal, and in the absence of a legal right there can be no legal remedy. (*Penn* v. *Bornman,* 102 Ill. 523, and cases cited.) The constitution and by-laws of this association furnish the evidence of the object and purpose of the organization of the corporate body, and the contract between it and its members is to be determined by that instrument.

From the facts found by the Appellate Court there are reciprocal relations between this association and its fifteen hundred members, which may be summarized as follows: Appellee receives milk from members and ac-

counts to them for the same; guarantees to members payment for milk sold by it; fixes and determines the price of milk; retains five cents upon each can of milk sold, for each year; has authority over all milk consigned by any of its members to any stand within the corporate limits of the city of Chicago; a member can. not sell his stock except to a shipper and producer of milk, and must own as many shares as he ships cans of milk per day, but not to own more than fifty shares of stock.

That the object of the association is to control the price of and the purchase and sale of milk to retail dealers within the limits of the city of Chicago is clearly apparent, and this object is carried out by the concurrent action of the members and association,—by the action of the association on the one part, aided by the agreement of its members, who, assenting to the constitution and by-laws, carry out a scheme which is a combination, agreement or trust, by which they fix the price of an article of merchandise and limit the quantity to be sold within the corporate limits of the city of Chicago.

By the act approved June 11, 1891, in force July 1, 1891, entitled "An act to provide for the punishment of persons, co-partnerships and corporations forming pools, trusts and combines, and mode of procedure and rules of evidence in such cases," it is provided that any corporation, partnership, individual or association of persons who shall create, enter into, become a member of or a party to any pool, trust, agreement, combination or confederation, with another corporation, partnership, association or individual, to regulate or fix the price of any article of merchandise or commodity, or to limit or fix the amount or quantity to be produced or sold, shall be guilty of a misdemeanor and punished as provided in the act. By the sixth section of that act any purchaser of any article or commodity from any individual or corporation transacting business contrary to the provisions of

the act, shall not be liable for the price or payment of such article or commodity, and may plead the act as a defense to any suit for the price. These provisions were by the special pleas invoked as a defense to the suit. The statute, by its terms, makes a combination, trust or agreement between corporations, partnerships, associations or individuals to fix the price of any article of merchandise, or to limit the amount to be sold, an offense, which is sought to be prohibited; and it further provides that a purchaser of any article or commodity from any individual, company or corporation transacting business contrary to the preceding sections of the act shall not be liable for the price or payment of such article or commodity. The purpose of the arrangement between this corporation and the stockholders thereof was to fix the price and control and limit the quantity of milk shipped. The purposes attempted to be accomplished through the corporation were illegal. To carry out such purposes it stands as the active business agent of the members, who are stockholders, contracting with it to carry out the purposes of the organization. It is a combination in violation of the statute and in restraint of trade. Any purchaser of any commodity thus sold by such organization is not liable for the price thereof.

It is urged that the corporation can not alone enter into a trust or combination that would be a violation of this statute. Whilst it is true, as a general proposition, that a corporation may be created and constituted a legal entity, existing separate and apart from the natural persons composing it, yet it can not act independently, or against the will, or abstain from complying with the direction, of the natural persons who constitute the corporate body. A corporation is, in fact, an association of persons united in one body, having perpetual succession, vested with political rights conferred upon it by the authority creating it. (Morawetz on Corp. sec. 227; 1 Kyd

on Corp. 13.) Such being the nature of the corporate body, acts done by it are the acts of the associated persons, as corporators or as individuals, and in which capacity the act is done must be determined from the nature and character of the act and the purpose for which the corporation was organized. (*State ex rel.* v. *Standard Oil Co.* 149 Ohio, 137.) And when the acts of the corporate body are violative of the statutes of the State, and would be a misdemeanor that would subject to punishment in accordance with law, such acts are wholly without the lawful power of the corporation, as the State will create no body with authority to violate it laws. And where, in the organization of the corporate body or the control exercised by the stockholders in determining the agencies selected for managing its business, the business as thus conducted, managed and controlled is against public policy or in contravention of a statute of the State, such acts of the corporate body and of the individual shareholders are the combined acts of all, and courts are not so powerless that they may not prevent the success of ingenious schemes to evade or violate the law. There can be no immunity for evasion of the policy of the State by its own creations. The corporation, as an entity, may not be able to create a trust or combination with itself, but its individual shareholders may, in controlling it, together with it, create such trust or combination that will constitute it, with them, alike guilty.

This corporation was organized February 24, 1891, and engaged in business, and the statute invoked by the pleas as a defense became a law July 1, 1891, and the appellee urges, that even if it be admitted that a combination between a corporation and its stockholders exists, such combination occurring before the passage of the act can not be held contrary to its provisions, and that the circuit court erred in refusing to hold propositions submitted by appellee which presented this question. The rule is

settled that corporations created within this State are amenable to the police power, and such bodies are not beyond legislative control, and are amenable to the same extent as natural persons. (*Ruggles* v. *People*, 91 Ill. 256.) The corporation is subject to the statute, and although the contract of guaranty was entered into before the passage of the act, yet by its terms the furnishing of the commodity named, from month to month, was contemplated, and by the facts as found by the Appellate Court that for which the price is sought to be recovered in this case was furnished after the passage of the act. The acts of the corporation and its stockholders with reference to this sale were within the meaning of the act. Whilst the corporation and appellants entered into the contract before the passage of the law, the contract, at the time of its execution, was unilateral, and under no circumstances could a recovery be had thereon until the defendants had the benefit of the consideration for which they bargained, (*Richardson* v. *Hardwick,* 106 U. S. 252,) which did not occur until after the passage of the act. With reference to this guaranty the act was not in contravention of section 14, article 2, of the constitution of this State.

There was no error in the trial court refusing to hold as law the propositions submitted by the appellee, nor in holding as law the propositions submitted by appellants and finding for the defendants, and entering judgment against the plaintiff for costs. There was error in the Appellate Court reversing the judgment of the circuit court.

The judgment of the circuit court is affirmed and the judgment of the Appellate Court is reversed.

*Judgment reversed.*