### THE VIGILANCIA.

### THE SEGURANCA.

### THE ALLIANCA.

### THE ADVANCE.

#### ATLANTIC TRUST CO. v. PROCEEDS OF THE VIGILANCIA et al.

(District Court, S. D. New York. May 7, 1895.)

1. CORPORATION BONDS—SALE BELOW PAR NOT USURY—BY-LAWS—PUBLICATION —COMPUTATION OF TIME.

The Brazil M. S. Co., a New York corporation, issued its bonds at 80 cents on the dollar by vote of directors elected at a meeting on the 28th, of which notice was first published on the 8th, the by-laws requiring notice to be published "not less than 20 days previous." *Held*, that under the law of New York usury was not available as a defense either to the corporation or to judgment creditors, as against a mortgagee of the company's ships to secure the bonds; and that the notice of publication was sufficient.

2. SURPLUS PROCEEDS OF VESSELS—EQUITABLE MORTGAGE BY CONTRACT—ASSENT OF STOCKHOLDERS—REFILING.

A mortgage of three steamships already built, covered also two others begun but not finished, and not then registered; the mortgage covenanted

for the execution of supplementary mortgages on the latter vessels when completed, which were afterwards executed; but in the meantime a state statute required the assent of two-thirds of the stockholders to a corporation mortgage, and this assent was not sought or obtained. *Held*: (1) that the statute did not apply to mortgages given in execution of contracts made before the act was passed, and made upon valuable consideration already paid; and that (2) if it did, the original mortgage and contract for further mortgages on the new vessels, created an equitable mortgage upon the vessels and the proceeds in the registry superior to the subsequently accruing claims of the contesting judgment creditors.

In the matter of the petition of the Atlantic Trust Company against the proceeds of the Vigilancia, Seguranca, Alliancà, and Advance.

Carter & Ledyard and E. L. Baylies, for petitioners.

R. D. Benedict and Maxwell Evarts, for Huntington and Pratt & Co.

Cary & Whitridge and W. P. Butler, for Brown Bros.

James McKeon, for G. & R. Hudson.

W. Mynderse, for B. & F. M. Ins. Co. and others.

BROWN, District Judge. Petitions for the surplus proceeds of the above vessels having been filed by the Atlantic Trust Company, as mortgagee in trust for holders of bonds of the United States & Brazil Mail Steamship Company, as well as by other creditors, who contest the validity of the trust mortgage, and upon an order of reference thereon, the commissioner having made his report, exceptions have been filed to the commissioner's findings sustaining the validity of the mortgage as against creditors as well as against the steamship company. The principal points of the contestants in claiming the invalidity of the mortgage are: (1) That the mortgage was usurious and void as against creditors, because the bonds were sold at a discount of 20 per cent.; (2) that the directors by whom the mortgage was executed were not elected in conformity with the by-laws of the company, which required a previous notice of 20 days of the time and place of holding the election; (3) that the supplementary mortgages upon the Seguranca and Vigilancia were void, because made after the act of 1890, which requires the written assent of two-thirds of the stockholders, which was not obtained.

The report of the commissioner presents a full statement of the facts; and he overrules each of these objections, with a statement of his reasons therefor, which seem to me, upon careful examination, to be sound.

1. It is a principle of constant application in the federal courts that the construction of a state statute given to it by the highest court of the state, is to be taken as the meaning of the statute, and effect given to it accordingly. The defense of usury in actions against corporations is expressly prohibited by the state statute of 1850. The construction given to this act is, that in effect it repeals the statute of usury as respects corporations. Curtis v. Leavitt, 15 N. Y. 9, 85, 154, 229; Rosa v. Butterfield, 33 N. Y. 665, 675; Merchants' Exch. Nat. Bank v. Commercial Warehouse Co., 49 N. Y. 635; Bank v. Wheeler, 60 N. Y. 612; affirmed 96 U. S. 268. This

has been so often affirmed that I do not consider myself at liberty to regard this defense as available to the contestants. The statute is for the protection of the lender to corporations; and this purpose would be thwarted if his security could be destroyed by a defense of usury interposed by creditors, as much as if that defense were allowed to be interposed by the corporation itself. In the language of Rosa v. Butterfield, such contracts, since the act of 1850, are "not usurious," and it is immaterial that the defense is not made directly by the corporation.

2. The meeting at which the directors who executed the mortgage were chosen was held on May 28, 1889, and notice thereof was published on May 8, and on every week day thereafter, including the 28th. The by-laws required that "notice of the time and place of holding the election shall be published not less than 20 days previous thereto." The contestants claim that the by-law required 20 full days to intervene, which would not be till May 29th. This is contrary, however, to the ordinary rule for the computation of time in this state. By Code Civ. Proc. §§ 787, 788, it is provided that "the time within which publication of legal notices or within which acts in actions or any special proceedings are required to be done, shall be computed by excluding the first day and including the last"; and by section 5013 of the United States Revised Statutes a similar provision was made in regard to proceedings in bankruptcy. These provisions do not literally include the publication of notices under the by-laws of corporations. But the state rule, prescribed in all cases of legal proceedings, is a legislative provision of such importance, and its analogy to the present case is so plain, that I can have no doubt that it ought to be adopted, in the absence of any contrary indication, as the meaning and intent of this by-law. In most of the cases in which a different rule has been adopted, the language construed has been peculiar, seeming to require the specified number of days or months to have elapsed; such as the entry of judgment "after four days," or avoiding an assignment "within four months." Dutcher v. Wright, 94 U. S. 553; Kane v. City of Brooklyn, 114 N. Y. 586, 594, 21 N. E. 1053. In the present case there is nothing in the language of the by-law to indicate that both the first day and the last should be excluded. The by-law, I find, required only a publication "not less than 20 days previous"; and a publication on the 8th was, as I find, a publication 20 days previous to the 28th.

3. The original mortgage, dated July 1, 1889, was executed on the 12th day of December, 1889. It covered the ships Allianca, Advance and Finance, and other property, and also two steamships to be called the Seguranca and Vigilancia, then in process of building under contract, at Chester, Pa., but unfinished, and not then entitled to registry. The mortgage was executed for the purpose of retiring certain outstanding bonds, and for the purpose of procuring the moneys necessary to complete the building of the two new steamships. This mortgage expressly covered the Seguranca and Vigilancia, already begun, but then incomplete; and it covenanted for the execution of two further mortgages, similar to the

first, on the steamships Seguranca and Vigilancia respectively, as soon as they should be completed and become entitled to a certificate of registry. Upon the faith of this mortgage, the bonds were issued and purchased by Mr. Pratt, upon the agreement that the moneys paid therefor were to be applied strictly to the construction of the two new steamers, and to the retirement of the existing bonds. Upon the completion of the steamers, the two supplementary mortgages were accordingly afterwards executed; that of the Seguranca on the 8th day of September, 1890; that of the Vigilancia on the 4th day of December, 1890. All three mortgages were duly filed in the customhouse at New York, and were also filed as chattel mortgages in the office of the register of the city and county of New York, pursuant to the state law.

I concur with the commissioner in the opinion that the state statute of 1890, requiring the written assent \of two-thirds of the stockholders to the execution of a mortgage by the corporation, is not applicable to mortgages given, like those upon the Seguranca and the Vigilancia, in fulfillment of a valid and obligatory contract made upon a full and valuable consideration before the statute was passed; that such an application of the statute was not the design of the act, and would not be constitutional if it was; since in that case its effect would be, not merely to make more difficult the performance of a previous contract, but to imperil, if not to destroy, the contract altogether, by making the substantial benefits of the contract dependent on the subsequent volition of the stockholders, over which the corporation had no power. Farmers' Loan & Trust Co. v. Equity Gas Light Co., 84 Hun, 373, 32 N. Y. Supp. 385.

If, however, the construction of the law of 1860 contended for by the contestants were correct, their situation in this proceeding would not be materially improved. For the express inclusion of the Seguranca and Vigilancia then already contracted for, and already partly in esse, in the original mortgage executed in December, 1889, and the covenants therein contained for further assurance, were sufficiently clear and definite to create an undoubted equitable mortgage, upon those two vessels, which gave the trust company an equitable lien thereon for the moneys advanced in good faith upon the strength of the original mortgage prior to the time when the contestants' claim arose. No doubt an equitable mortgage stands in no better position as respects creditors, and the necessity of a proper filing thereof, than a legal mortgage stands; but in the present case the filing of the original mortgage, and the refiling of the same from year to year, as well as of the new mortgages, gave full notice of these equitable rights, and as perfectly fulfilled all the purposes of the statute as regards this equitable mortgage, as they did with respect to the perfect legal mortgage of the ships already completed. Upon the first refiling there was a delay of a month beyond the statutory period; but as all the contestants' claims arose subsequent to the refiling, they are not in a situation to take any advantage of the prior laches.

As against an equitable mortgage, or a valid equitable lien, a subsequent execution creditor has no priority. An execution,

whether against real or personal estate, attaches only upon the debtor's actual interest, and is as much subject to a prior valid equitable lien or title as to a prior legal one. Averill v. Loucks, 6 Barb. 19, 27, and cases there cited (Paige, J.); Kiersted v. Avery, 4 Paige, 9; Lamont v. Cheshire, 65 N. Y. 30, 40; Frost v. Bank, 70 N. Y. 553-556; and see Sisson v. Hibbard, 75 N. Y. 542. Had the steamship company refused to give any supplementary mortgage at all, the rights of the bondholders under the original mortgage and the equitable hypothecation of the two vessels already contracted for and begun, would have been the same in a court of equity; and consequently those rights would prevail over mere execution creditors in the application for surplus moneys.

The other points referred to have been so satisfactorily treated by the commissioner, that I think it unnecessary to make further reference to them, and concur in what he has said.

Exceptions overruled and report confirmed.