STACK *v.* DETOUR LUMBER & CEDAR CO.

1. CORPORATIONS — POWERS — BORROWING MONEY— RATE OF IN-
TEREST—USURY — PROHIBITION TO PLEAD — EFFECT — ILLINOIS
STATUTE.
   Section 11 of the Illinois statute concerning interest (Ill. Rev.
   Stat. 1903, chap. 74), providing that "No corporation shall
   hereafter interpose the defense of usury in any action," was
   not intended to enlarge the power of corporations formed un-
   der the Illinois statute approved April 18, 1872 (Ill. Rev.
   Stat. 1903, chap. 32), to "borrow money at legal rates of in-
   terest" nor in any wise to affect the capacity of the corpora-
   tion to contract under its charter and the general laws of the
   State relating to corporations.

2. COURTS—RULE OF DECISION — FOREIGN STATUTES — CONSTRUC-
TION— SISTER STATES.
   In determining the powers under its charter of an Illinois
   corporation admitted to do business in this State, the court di-
   rects its attention to the construction placed upon the charter
   by the courts of Illinois, and is not concerned with the inter-
   pretation of a similar charter by the courts of another State.

3. CORPORATIONS—USURY—RIGHT TO PLEAD—ILLINOIS STATUTE—
EXTRA-TERRITORIAL EFFECT.
   Section 11 of the Illinois statute concerning interest (Ill. Rev.
   Stat. 1903, chap. 74), providing that "No corporation shall
   hereafter interpose the defense of usury," has no extra-terri-
   torial effect, and cannot operate to deprive an Illinois corpo-
   ration, admitted to do business in this State, of its right to
   plead such defense in our courts when sued on a Michigan
   contract.

4. SAME—FOREIGN CORPORATIONS—RIGHTS.
   The effect of sections 8587 and 10466, 3 Comp. Laws, is to put
   foreign corporations, complying with the provisions of our
   statutes and thereby acquiring authority to transact business
   in this State, upon the same footing as domestic corporations,
   with the same right to prosecute and defend actions in the
   courts of this State and to enforce their contracts and use the
   remedies authorized by law as are possessed by such domestic
   corporations.

5. CONTRACTS—CONSTRUCTION—WHAT LAW GOVERNS.

> A mortgage executed by a foreign corporation admitted to do business in this State to the owners of a bank in this State covering lands located in this State and intended to be performed in this State is a Michigan contract, subject to interpretation by and enforcement under our laws.

6. USURY—CONTRACTS—CONSTRUCTION—USURIOUS CONTRACTS.

> A contract to pay the highest rate of interest allowed by law and in addition thereto the taxes upon the indebtedness represented by the contract is usurious.

Case made from Chippewa; Steere, J. Submitted November 13, 1907. (Docket No. 179.) Decided January 31, 1908.

Bill by John K. Stack against the Detour Lumber & Cedar Company to foreclose a mortgage. From a decree for complainant, defendant appeals. Reversed, and decree entered for defendant.

*Carey & Hayden*, for complainant.

*McDonald & Doore* (*E. S. B. Sutton*, of counsel), for defendant.

BLAIR, J. This is a suit to foreclose a mortgage upon real estate in the county of Chippewa. The mortgage was executed by the defendant to John K. Stack and John Corcoran on the 30th day of November, 1901, for $26,976.70, to secure payment of five notes for that sum, Stack and Corcoran then being the owners of the Bank of Escanaba, and the defendant being a corporation organized under the laws of the State of Illinois for the purpose of manufacturing and buying and selling lumber and forest products, and had duly filed its articles of incorporation in the office of the secretary of State for Michigan and the county clerk of Chippewa county prior to the date of the mortgage, and complied with the other requirements of section 8587, 3 Comp. Laws, and Act No. 206 of the Public Acts of 1901, and had its principal office in

Michigan at Detour, in Chippewa county, where it was carrying on a general lumber business and had a saw-mill.

John Corcoran, one of the mortgagees, died July 3, 1904, and complainant Stack purchased the interest of John Corcoran in the mortgage and mortgage debt, prior to filing this bill, from the administratrix of his estate, and is now the sole owner of the mortgage and notes.

The mortgage reserves, by one of its covenants, 7 per cent. per annum, and, in addition, the mortgagor, by a covenant in the mortgage, covenanted to pay any and all taxes and assessments levied on account of the mortgage, or the indebtedness secured thereby, or upon the interest or estate in the lands created by the mortgage, or by the indebtedness. Further, it agreed to pay all taxes already assessed or levied upon another mortgage for $30,000 made by it to Stack & Corcoran upon same lands, which last-mentioned mortgage reserved 7 per cent. interest per annum, and was dated September 8, 1899.

The defendant has paid upon the mortgage being fore-closed, from time to time, $14,181.96, some being devoted by complainant to payment of interest, some to pay taxes on the mortgage itself assessed against the mortgagees, and some upon the principal debt; and the complainant claimed that the sum due, by reason of the covenants in the mortgage, on the hearing, was $23,490.99; and the defendant claimed that only the sum of $12,794.74 was due; that the mortgage, by reason of its covenant to pay the taxes on the mortgage and taxes on the mortgage of September 8, 1899, is usurious, and all payments made should be applied in reduction of the principal sum of the mortgage, agreeably to the defense of usury, which is fully set up in the answer of defendant.

The complainant claims that the defendant, being an Illinois corporation, is precluded from interposing the defense of usury, because the statutes of Illinois prevent all Illinois corporations from interposing the defense of usury.

The court applied the said $14,181.96 in payment of the

taxes paid by complainant on the mortgage debt, and on accrued 7 per cent. interest reserved in the mortgage, and the balance on the principal debt, and rendered its decree for $23,490.99, denying the defense of usury; and defendant appeals, claiming, among other things, the mortgage to be in contravention of sections 4857 and 4858, 2 Comp. Laws, pertaining to usury.

The question presented for review is: Is an Illinois corporation admitted to do business in Michigan deprived of the "right" to plead usury on foreclosure of a mortgage executed in Michigan, payable here and covering lands here, because the interest statute of Illinois contains a provision that "No corporation shall hereafter interpose the defense of usury in any action?"

Complainant contends that the disability imposed upon defendant by this provision of the statute regulating rates of interest in Illinois constitutes a restriction upon its general capacity and powers which follows it and attaches to its charter in this State, citing: 19 Cyc. pp. 1214, 1215; *American Water Works Co.* v. *Trust Co.*, 20 Col. 303 (25 L. R. A. 338); *Fidelity Mut. Life Ass'n* v. *Ficklin*, 74 Md. 172; *Thompson* v. *Waters*, 25 Mich. 214; *Diamond Match Co.* v. *Powers*, 51 Mich. 145; *Supreme Lodge K. of H.* v. *Nairn*, 60 Mich. 44; *Starkweather* v. *Bible Society*, 72 Ill. 50; *Edgeworth* v. *Wood*, 58 N. J. Law, 463; *Rue* v. *Railway Co.*, 74 Tex. 474; *Dubuque Fire & Marine Ins. Co.* v. *Oster*, 74 Ill. App. 139; *North Point Consolidated Irrigation Co.* v. *Utah & Salt Lake Canal Co.*, 16 Utah, 246 (40 L. R. A. 851); *Ford* v. *Milk Shippers' Ass'n*, 155 Ill. 166 (27 L. R. A. 298).

The defendant corporation was organized under the provisions of "An act concerning corporations," approved April 18, 1872, providing:

"That corporations may be formed in the manner provided by this act for any lawful purpose except banking, insurance, real estate brokerage, the operation of railroads

and the business of loaning money." Revised Statutes Illinois (1903), chap. 32, p. 471, § 1.

Section 5 provides, among other things, that corporations formed under the act "may borrow money *at legal rates of interest* and pledge their property, both real and personal, to secure the payment thereof." Chapter 74, page 1128, relates to interest. Section 1 provides that the legal rate of interest shall be 5 per cent. Section 4 provides that 7 per cent. may be contracted for. Section 5 provides that "no person or corporation" shall, "directly or indirectly, accept or receive" any greater sum "than as above prescribed." Section 6 provides as a penalty for contracting for more than 7 per cent. that "such person or corporation shall forfeit the whole of said interest so contracted to be received and shall be entitled only to recover the principal sum due to such person or corporation," etc. Section 7 provides that the defense of usury must be pleaded. Section 11 provides: "No corporation shall hereafter interpose the defense of usury in any action."

We think it has been settled by the supreme court of Illinois that section 11 was not intended to enlarge the power of the corporation to "borrow money at legal rates of interest" nor in any wise to affect the capacity of the corporation to contract under its charter and the general laws of the State relating to corporations. A corporation is not authorized to borrow money at a higher rate than the statute prescribes. On the contrary, the power granted to it by its charter is to "borrow money at legal rates of interest." A contract by a corporation to pay interest in excess of 7 per cent. is as much within the ban of the statute as a similar contract on the part of an individual.

"The theory seems to be, that because a corporation cannot set up usury as a defense, any person or corporation dealing with a corporation may lawfully exact such rate of interest as may be agreed upon, whether in excess of the statutory limit or not, so that, where a corporation

is the debtor, no rate of interest is fixed by the laws of this State. To this view we are totally unable to yield our assent.

"The defense of usury is made by setting up and seeking to enforce the forfeiture or penalty imposed by section 6 of the statute. That, doubtless, a corporation cannot do. But the force and efficacy of the statute, or the binding nature of its prohibitions, does not depend upon the penalty which it imposes for disobedience to those provisions. Whatever a statute forbids becomes unlawful, whether a penalty is annexed as a consequence of disobedience or not. While corporations cannot enforce the forfeitures imposed by our usury laws, it does not follow that the statutory prohibition against exacting or paying more than the lawful rates of interest has no application to them. The prohibition is general, and applies by its terms to every person or corporation, and no contract, whoever may be the parties to it, can be so framed as to provide for the reservation of more than the rates of interest allowed by the statute without being in contravention of the statute and therefore unlawful.

"Nor does it follow that, because the debtor who has agreed to pay more than the legal rate of interest is a corporation, and therefore incapable of interposing the defense of usury, the law will treat the contract as valid and enforce it according to its terms. No agreement between parties to do a thing prohibited by law or subversive of any public interest which the law cherishes, will be judicially enforced.    *    *    *

"Our statute in relation to interest contains both a prohibition and a penalty. Where the party agreeing to pay illegal interest is a corporation, the penalty cannot be invoked in its favor, but the prohibition remains wholly unaffected by the provisions of section 11, which takes from corporations the right to interpose the defense of usury." *Union Nat. Bank of Chicago* v. *Railway Co.*, 145 Ill. 208.

A different view has been taken of such a statute in New York, where it has been held that its effect is to repeal the usury laws of the State as to corporations and to render valid any contracts they may choose to make as to interest. *Rosa* v. *Butterfield*, 33 N. Y. 665; *The Vigi-*

*lancia,* 68 Fed. 781.   In this case, however, we are only concerned with the interpretation of the supreme court of Illinois.

The enforcement or nonenforcement of penalties or forfeitures for the violations of the statutes of a State are peculiarly matters of local concern, which have no force outside of the boundaries of the State.   This section 11 seems to be designed for the enforcement of a local policy only, and not intended to operate outside of the State under the decisions of the supreme court of Illinois. *Warren* v. *First Nat. Bank of Columbus,* 149 Ill. 9 (25 L. R. A. 746).

"It is the charter alone which, by the law of comity, is recognized and enforced in other jurisdictions, and not the general legislation of the State in which the company is formed.   The general laws and regulations of a State are intended to govern only within the limits of the State enacting them, and the State can have no power to give them extraterritorial force.   Such provisions do not, as a rule, enter into contracts made within the State, if they are to be performed in another jurisdiction.   It follows, therefore, that where a State statute is enacted for the enforcement of a local policy only, it will not be presumed that such statutory provision was intended by the State, or by the shareholders forming the corporation, to enter into the charter contract, and to regulate the company in its transactions outside of the State, and it will not affect the validity of the dealings of the company in foreign States.   2 Morawetz on Corporations, § 967."

See, also, *Mutual Life-Ins. Co.* v. *Cohen,* 179 U. S. 265.

Usury laws have been uniformly held to be local and having no extraterritorial effect.   It necessarily follows that statutes designed to enforce compliance with such laws must be restricted to a local operation.   29 Am. & Eng. Enc. Law (2d Ed.), p. 527; *Western Transportation & Coal Co.* v. *Kilderhouse,* 87 N. Y. 430.

Again, the denial to corporations of the right to invoke the usury laws in their defense, as construed by the

supreme court of Illinois, presents a question of pleading not different in principle from the question presented by a denial of the right to invoke statutes of limitation in their defense, and it is the settled law that—

" Matters respecting the remedy, such as the beginning of suits, admissibility of evidence, statutes of limitation, depend upon the law of the place where the suit is brought." *Scudder* v. *Union Nat. Bank,* 91 U. S. 406.

See, also, *Townsend* v. *Jemison,* 9 How. (U. S.) 407; *Home Life-Ins. Co.* v. *Elwell,* 111 Mich. 689; *Bank of the United States* v. *Donnally,* 8 Pet. (U. S.) 361.

If section 11 should be given the extraterritorial effect claimed for it, it would conflict with our local interest laws. Our statute, like the Illinois statute, makes a contract for more than 7 per cent. interest unlawful and undertakes to promote compliance with its provisions by penalizing non-compliance on the part of the lender by a forfeiture of the entire interest contracted for; and the right to interpose the defense belongs to corporations as well as to individuals. If one of our citizens can escape the penalties of our laws, intended to operate upon all, by virtue of this Illinois statute, then, as to a part of our citizens, our own laws may be annulled by a foreign statute. And if all of our sister States should adopt similar provisions, our usury laws would, to a considerable extent, become ineffective.

Section 8587, 3 Comp. Laws, provides that foreign corporations authorized to do business in this State "shall enjoy all the rights and privileges and shall be subject to all the restrictions, requirements, and liabilities of corporations of like character incorporated under Michigan statutes."

Section 10466, 3 Comp. Laws, provides that foreign corporations "may prosecute in the courts of this State in the same manner as corporations created under the laws of this State," etc.

"The power of determining whether, and how far, or with what modification, or upon what conditions, the

laws of one State, or any rights dependent upon them, shall be recognized in another, is a legislative one; the comity involved is the comity of the States and not of the courts; and the judiciary must be guided in deciding the question by the principle and policy adopted by the legislature." *Thompson* v. *Waters*, 25 Mich. 214.

The principle and policy of the legislature is embodied in section 8587, 3 Comp. Laws, being Act No. 270 of the Public Acts of 1895.

The effect of this statute is to put foreign corporations, complying with its provisions and thereby acquiring authority to transact business in this State, upon the same footing as domestic corporations, with the same right to prosecute and defend actions in the courts of this State and to enforce their contracts and use the remedies authorized by law as are possessed by such domestic corporations. *Isle Royale Land Corp.* v. *Osmun*, 76 Mich. 162; *Floyd* v. *Investment Co.*, 49 W. Va. 327 (54 L. R. A. 536).

" The manifest and only purpose was to produce uniformity in the powers, liabilities, duties and restrictions of foreign and domestic corporations of like character, and bring them all under the influence of the same law." *Stevens* v. *Pratt*, 101 Ill. 206.

The contract in question in this suit was made and to be performed and its performance secured upon lands in this State. It was a Michigan and not an Illinois contract, subject to interpretation by and enforcement under our laws. *National Mut. Bldg. & Loan Ass'n* v. *Burch*, 124 Mich. 57; *Hoskins* v. *Loan Ass'n*, 133 Mich. 505; *Palmer* v. *Hill*, 140 Mich. 468; *Cobe* v. *Summers*, 143 Mich. 117.

The contract was usurious and unlawful. *Green* v. *Grant*, 134 Mich. 462.

In consequence of the usurious character of the contract, complainant forfeited the entire amount of interest and his recovery must " be limited to the principal sum, less payments actually made, however designated at the

time of payment." *Estey* v. *Loan Ass'n*, 131 Mich. 502.

The decree of the circuit court is reversed, with costs, and a decree directed in accordance with this opinion.

GRANT, C. J., and MOORE, CARPENTER, and McAL-VAY, JJ., concurred.