THE SECURITY COMPANY *vs.* THE TOWN OF HARTFORD.

Hartford Dist., May T., 1891. ANDREWS, C. J., LOOMIS, SEYMOUR, TOR-RANCE and J. M. HALL, Js.

A life insurance company had a fund, called the "Safety Fund," for the security of its certificate-holders, made up of certain sums set apart from payments made by the latter, the whole being held by a trust company, the contract between the insurance company and the trust company being made a part of every certificate and stipulating that the fund belonged to the insurance company subject to the trusts expressed. The insurance company had a capital, divided into shares, the stock being taxable by law against the respective stockholders at its market value. The safety fund amounted to $800,000, and was an important factor in fixing the market value of the stock. Held that the securities and other property constituting the safety fund were not taxable in the hands of the trust company as property held in trust for the certificate-holders.

[Argued May 6th,—decided June 1st, 1891.]

APPLICATION to set aside an assessment of property in the hands of the plaintiff as trustee, made by the board of relief of the defendant town ; brought to the Superior Court in Hartford County, and, upon an agreed statement of facts, reserved for the advice of this court. The case is fully stated in the opinion.

*A. P. Hyde* and *W. W. Hyde*, for the plaintiff.*

1. Under the contract of insurance, in pursuance of which the money constituting the "safety fund" is paid in, the money belongs to the insurance company. The fund is to be received by the company and disposed of by them as provided in the contract of insurance; all forfeitures of an inerest in the fund are to the company; and the contract with the plaintiff or trustee states that "the fund belongs to the party of the first part (the company), subject to the express trusts herein provided."

2. The legislature, in a resolution passed in 1889, authorized the trustee to change the investments of the fund "with the consent and approval of the Hartford Life & Annuity Ins. Company." This was a recognition by the legislature of the company's ownership of the fund.

3. The security company has no interest in the fund, except so far as they may be entitled to compensation for its care and management under the contract.

4. Placing the fund in the hands of a trustee did not make it taxable. If it had remained in the hands of the company, but subject to the same liabilities and contingencies by contract with the company, would it have been taxable? We say clearly not. Placing it in the hands of a trustee in order to make the security perfectly safe for the policy-holders, but not changing the interest between the policy-holders and the company, except in so far as the legal title is concerned, does not change its liability to taxation. This fund is established, and this trusteeship is formed in order to make the fund in fact what it is in name, a "safety fund." *State ex rel. Internat. Life Assu. Co.* v. *Haight*, 35 N. Jer. Law, 279; *British Commercial Life Ins. Co.* v. *Commissioners of Taxes,* 1 Abbott, N. Y. Court of Appeals, 199.

5. This fund is no more a subject for taxation than any other assets of the insurance company. That the creation

---

* Upon the case coming up for argument in this court a preliminary question arose as to which party should go forward. The judges decided that, as it was a suit to set aside an assessment, the burden was on the plaintiff to show that the assessment was illegal, and that therefore the plaintiff's counsel should go forward.

of this fund has really added to the business of the insurance company, and increased the market value of its stock, is admitted; but this increased valuation of stock has already been assessed to every stockholder, and the taxes must be paid thereon in the place where he resides. To tax the assets which create that value would be double taxation, and in violation of those provisions of our law which tax the stock of an insurance company in lieu of a tax upon its assets.

*H. C. Robinson* and *W. F. Henney*, for the defendant.

1. It is the policy of the law to require all property, except such as is specially exempted, to bear its proportion of the public burdens. *Copp* v. *Town of Norwich*, 24 Conn., 30; *Coite* v. *Society for Savings*, 32 id., 173; *Cornwall* v. *Todd*, 38 id., 443, 447. The statute makes it the duty of every sole trustee to make return to the assessors of the town where he resides of the taxable personal property in his hands, belonging to the trust estate. Gen. Stat., § 3841. Of course this provision applies to a corporation as trustee as fully as to an individual trustee. *Savings Bank* v. *New London*, 20 Conn., 115. The statute is plain. The trustee must show some statute exempting him from this law; and statutes exempting from taxation are to be strictly construed. Sutherland on Stat. Construction, 473, and authorities cited.

2. The property in question is not exempt from local taxation, either by statute or upon principle. This is apparent (1st.) because the legal title to the property is in the Security Company, as trustee; (2d.) because by the terms of the trust contract and by the certificates themselves, the beneficial interest in the property is in the certificate-holders, and not in the insurance company. The trustee contract is tripartite, the parties being the insurance company, the Security Company, and each of the holders of certificates. By it the insurance company agrees. (1st.) To issue to persons contracting therefor certificates in a special department, to be known as the "Safety Fund Department." (2d.) To insert in such certificates sundry agreements, to wit: to deposit with the trustee the sum of $10 when re-

ceived from the certificate-holder, for the purposes expressed in the contract; to divide semi-annually the net income of the fund among certificate-holders of five years or longer standing; to divide the $10 contributions of members among certificate-holders after the fund amounts to one million dollars, in like manner as the interest; and that the fund shall be in no wise liable to any use except as set forth in the contract, so long as any certificate shall remain in force. The Security Company as trustee "agrees with the party of the first part and its successors, and with each of the holders of the aforesaid certificates, that it will receive, hold, manage, and dispose of all said deposits made with it by said insurance company, principal and income, in accordance with the uses and purposes specified;" "and shall render true statements of the account of said funds and the income thereof to any person entitled to request the same by reason of an interest therein." If it should ever happen that the mortuary fund is insufficient, the trustee is to turn the fund investments into cash and divide the same among the certificate-holders entitled. The expenses of the management of the fund are to be paid from its income. The certificate-holder agrees to pay to the insurance company the admission fee, $3 per annum on each $1,000 of indemnity, and all mortality calls; which payments, less certain charges, are to constitute the mortuary fund out of which all death claims are to be paid; the certificate to be null and void in default of any of these payments. The certificate-holder further agrees that the indemnity to which his certificate entitles him shall be paid out of the mortuary fund and not otherwise. From these provisions it is clear that the income of the safety fund is by the terms of the trustee's contract payable to the insurance company as the agent for the certificate-holders and solely for their use, and that the principal of the fund is held by the trustee for the purpose of being divided among the certificate-holders, whenever, in the progress of events, the mortality calls shall be insufficient to pay a death claim. And the conclusion is inevitable that the insurance company has no interest in the

fund other than as a sort of residuary legatee, and that only in the event of the happening of an impossible contingency, namely, that the company ceases to do assessment business and all certificates are fully paid and settled out of the mortuary fund.

3. It is claimed, however, that the insurance company is not asking to have its property exempted from taxation, but that, on the contrary, the property in question is taxed in the taxes assessed upon the capital stock of the company, and that to tax it again in the name of the trustee would be double taxation. But this tax is not upon the property of the corporation. It is explicitly upon the shares. *Batterson* v. *Town of Hartford,* 50 Conn., 560. If this fund does not belong to the company then clearly the tax on the market value of the stock does not reach it. It will be urged, however, that it enhances the market value of the company's stock. This is simply saying that its contract with the safety-fund certificate-holders is lucrative. But this would not make the fund in any sense belong to the company. The words of the insurance commissioner in his report on this very company, (Report of 1890, part 2,) succinctly express it all :—" The capital stock and funds of the company are not pledged as a guarantee for the payment of its certificates, nor does the company assume any responsibility beyond the faithful application of the sums received by it for deposit, and from interest thereon, and for mortuary assessments." Can it be doubted that the commissioner, in a later paragraph, rightly denominated this property as " a safety fund belonging to certificate-holders," and that a tax on the stock of the company has no reference to this fund?

4. But it is utterly unimportant whether this fund belongs to the certificate-holders or to the insurance company; it must pay taxes unless there can be found a statutory exemption. There can no such exemption be found. This is a property tax; the tax on the shares is not a tax on the assets of the company, as has been shown. In the case of companies having a capital stock it often occurs that they

have taxable assets on which they pay taxes, whether it is a part of their capital stock or not, and whether the property has paid taxes or not, and even if the property is not taxable. Thus railroad companies pay upon their investments whether the property has paid taxes elsewhere or not. *State v. N. York, N. Haven & Hartford R. R. Co.*, 60 Conn., 326. Thus in the Travelers' Insurance Company case they paid taxes on non-taxable government bonds, which were a part of the capital. But this fund is in no sense a part of the capital of the Hartford Life & Annuity Ins. Company. They return it to the department as a book-keeping asset, with a precisely large amount of liability on the other side of the page, showing that they do not even pretend that it is capital. Again they make return to the department of all their doings under these contracts as an assessment company. But to claim that this fund is a part of their capital is idle, because no dollar of their capital ever went into it.

5. That this fund in the hands of the trustee is taxable by the town of Hartford is clear from all the analogies. *Town of Bridgeport* v. *Bishop*, 33 Conn., 187 ; *Osborn* v. *Hartford & N. Haven R. R. Co.*, 40 id., 498 ; *Nichols* v. *New Haven & Northampton Co.*, 42 id., 103 ; *Kirtland* v. *Hotchkiss*, id., 426 ; *Batterson* v. *Town of Hartford*, 50 id., 560 ; *State* v. *N. York, N. Haven & Hartford R. R. Co.*, 60 id., 326 ; *Ricker* v. *Am. Loan & Trust Co.*, 140 Mass., 346.

TORRANCE, J. This is a proceeding in the nature of an appeal from the doings of the board of relief of the town of Hartford, brought under the statute to the Superior Court. Before that court the facts were agreed upon by the parties and found by the court, and the case is reserved for the advice of this court.

The facts in the case, so far as it is necessary to state them here, are these. The Hartford Life & Annuity Insurance Company claims to be the owner of a certain fund, known as and called the " Safety Fund," amounting to more than eight hundred thousand dollars. This safety fund constitutes a large and valuable part of the assets and property of

the corporation.    The insurance company is incorporated
with a capital stock of $250,000, all of which stock is divided
into shares, and is duly assessed to its respective owners as
provided by law; and the assets constituting the safety fund
form a very important factor in determining the market
value of the stock.    On the first of October, 1890, the Se-
curity Company, one of the parties to this proceeding, held
the property constituting the safety fund, as trustee, under
the provisions of a certain contract made between it and
the insurance company, which is set out in the record.

Neither the Security Company, as such trustee, nor the
Hartford Life & Annuity Insurance Company, made out or
returned to the assessors of the town of Hartford any list of
the property constituting the safety fund; nor did the as-
sessors make out any such list.    On the ninth of February,
1891, the board of relief of the town of Hartford, after due
notice, made out a list against the Security Company, as
such trustee, for the sum of $315,531, which sum was made
up of certain stocks, bonds, loans and cash, constituting part
of the safety fund, in the hands of said trustee, together
with an addition of ten per cent by way of penalty, under
the statute for failing to make out a sworn list.

Prior to the making out of this list both corporations, by
their proper agents, appeared before the board of relief, to
show cause why said property should not be added to the
assessment list, offering to be sworn and to answer all ques-
tions touching the property constituting the safety fund,
and protesting against the proposed assessment.

The creation of the safety fund has largely increased the
business of the Hartford Life & Annuity Insurance Com-
pany, and has largely enhanced the market value of the
shares of its stock.    Proof of this was received, subject to
objection to its admissibility.

After the list was made out by the board of relief, both of
said corporations joined in the proceedings in the nature of
an appeal from the doings of the board of relief to the Su-
perior Court.    By agreement the town of Hartford reserved
the right to object to such joinder of parties, and no advan-

tage was to be taken of its failure to move to have the Hartford Life & Annuity Company stricken from the case as one of the parties thereto.

In the view we take of the case it is of no importance whether the evidence objected to was or was not admissible. The objection for misjoinder was not much pressed before this court on the argument, and in view of the conclusions we have reached on the principal questions in the case, it is unnecessary to decide it or take further notice of it.

We think the case turns upon the question whether the property in question belongs to the Hartford Life & Annuity Insurance Company, as part of its assets upon which the market value of its shares of stock is based. The town claims that the beneficial interest in the safety fund property is in the certificate-holders, and not in the insurance company. It bases this claim upon the provisions of the trust contract, and the provisions of the certificate or policy issued by the insurance company under the trust contract. A copy of the trust contract and of the certificate or policy is spread upon the record.

The trustee's contract was made and entered into on the 31st day of December, 1879. It is a contract under seal, made and executed by the Hartford Life & Annuity Insurance Company of the first part, and the Security Company of the second part. It recites that the party of the first part proposes to issue to persons contracting therefor certificates of membership, in a special department of its business to be known as the Safety Fund Department, and to insert in such certificates sundry agreements with such persons, among which are the following :—To deposit with the trustee the sum of $10, when received from the certificate holder, for the purposes expressed in the contract. After the fund shall amount to three hundred thousand dollars, to divide semi-annually the net income of the fund among certificate holders of five years or longer standing. After the fund amounts to one million dollars, to divide the ten dollar contributions of members among certificate holders in like manner as the interest; the fund to be in no wise liable for

any use or purpose, except as set forth in the contract, so long as any certificate shall remain in force. If, at any time after five years from January 1st, 1880, or before that time after the safety fund shall amount to three hundred thousand dollars, the insurance company shall fail by reason of insufficient membership, or shall neglect, if legally due, to pay the maximum indemnity provided for by the terms of any certificate, and such certificate shall be presented to the trustee for payment, accompanied by the prescribed proof of such failure or neglect, the trustee is to convert the safety fund into money, and divide the same among the holders of certificates in force at that time. After this recital the contract proceeds in substance as follows:—

The insurance company appoints the Security Company as trustee, and agrees to deposit with it each of the ten dollar payments made by the certificate-holders as soon as received, until the fund amounts to one million dollars; when the trustee makes any payment from said fund to the insurance company, or as required by the contract, the liability of the trustee for the amount so paid is to cease; "it being understood and agreed that said fund belongs to the party of the first part, subject to the expressed trusts herein provided." The trustee then agrees with the insurance company, "and with each of the holders of the aforesaid certificates, that it will receive, hold, manage and dispose of all said deposits made with it by the insurance company, principal and income, in accordance with the uses and purposes specified in the hereinbefore recited agreements of the party of the first part with its certificate-holders;" to exhibit at all reasonable times to the insurance company all the securities and investments composing said trust fund; and to render true statements of the account of said fund to any person entitled to request the same by reason of an interest therein. The trustee further agrees to invest the fund, from time to time, in certain prescribed securities; to pay over to the insurance company semi-annually the income of the fund when said fund shall reach the amount of three hundred thousand dollars; to convert the fund into

money, and pay the same over to the certificate-holders, upon the happening of the prescribed event calling for such action ; and when it shall be shown that all certificates of membership issued by the insurance company in its safety fund department " have been legally settled and surrendered to it or properly canceled in accordance with their terms," the trust is to be at an end and the balance of the fund is to be paid over to the insurance company.

The certificate or policy contains the provisions set forth in the recitals of the trust contract, and in addition thereto the following in substance :—The certificate-holder pays an admission fee ; he agrees to pay during the first year $10 on each $1,000 of indemnity towards the safety fund ; also dues of $3 per annum on each $1,000 of indemnity ; also all mortality calls, duly made upon him, in order to form a mortuary fund ; and the indemnity " shall be due and payable out of the aforesaid mortuary fund and not otherwise."

These are all the provisions in the trust contract and in the certificate which seem at all material to the question under consideration. From them it is argued that the beneficial interest in the safety fund property belongs to the certificate-holders, and should be taxed as property held in trust for them and not for the company.

We are unable to reach this conclusion from these premises. The money which is to form the safety fund is received, it is true, from the members, and not from the stockholders ; but this is true also of the money received from the members " for expense dues," yet no one would claim that this money did not become the money of the insurance company when paid over. The insurance company and the members enter into a legal contract. Whether or not this contract, as the town seems to claim, is one which is much more favorable to the company than to the member, is of no consequence in the present inquiry. It is a legal contract in which the member, in consideration of such promises and agreements as the insurance company on its part makes therein, agrees to pay to it so much money. All of the money agreed to be paid under the certificate be-

comes, when paid, the money of the company, at least so far as the present question is concerned. For his money, so paid over, the member takes such promises and agreements on the part of the company as are contained in his certificate. One of these agreements is that it will use part of the money paid to it in forming a mortuary fund. All the right, interest or claim of any kind which the member has in or upon this fund, when formed, he has solely by virtue of his contract with the owner of the fund.

Another of these agreements is, that it will use a specified part of the money paid by the member to create a safety fund; and whatever right, interest, claim or demand the member has in or upon this fund, when created, he has solely by virtue of his contract with the owner of the fund.

Giving to the language of the certificate its ordinary meaning, we are unable to see why the money received by the company from the members does not all and equally become, when paid over, the money and property of the insurance company. The ten dollar payments are received to create a safety fund, and the money from the mortuary calls is received to form a mortuary fund, but both funds are to be formed by the company and managed by the company in such way and manner as it shall deem best, except so far as it may bind itself by contract to do otherwise. In the case of both funds it has undoubtedly by its contracts subjected the funds to certain claims, rights and trusts in favor of the members, but these do not change the ownership and dominion of the insurance company over the funds. So far as the safety fund is concerned it is expressly stipulated in the trust contract that the fund belongs to the insurance company, subject to the trusts expressed; and this trust contract, with this stipulation, is made a part of every certificate, and is printed therein in full. Thus the trustee and every member expressly agrees that the safety fund belongs to the insurance company; and indeed we think all the important provisions in both contracts seem to be based on the assumption that the insurance company is the owner of this safety fund.

It is true that the trustee agrees " with each of the holders of the aforesaid certificates," as well as with the insurance company, to " receive, hold, manage and dispose of " the deposits made with it by the company, " in accordance with the uses and purposes specified in the hereinbefore recited agreements of the party of the first part with its certificate-holders ; " but this language, whatever rights, if any, it may give to the certificate-holders as against the trustee, is, when taken in connection with the other provisions in both contracts, very far from proving that the certificate-holders and not the insurance company are the beneficial owners of the trust fund.

In short, after fully considering both contracts, we are unable to resist the conclusion that the property of this safety fund is the property of the insurance company, subject to all the claims, rights and interests of others acquired therein by virtue of contracts made with the insurance company, its owner. We hold, therefore, that the property constituting the safety fund belongs to the insurance company, as *cestui que trust*, and not to the certificate-holders.

The town however claims that, even if this be so, the property is taxable, because it is the property of the insurance company, and is not a part of its capital stock ; and that it is taxable unless it can be shown to be within some statutory exemption.

It may be conceded that the assessment attempted to be made is one against the property of the insurance company, and that unless the property put in the list be exempted from taxation, either expressly or by necessary implication, it is liable to taxation. It is said by the town that the property in question is no part of the capital stock of the company; that it is idle to claim that it is part of the capital because no dollar of the capital ever went into it ; and that in taxing the shares of stock in the hands of the stockholders this property is not taxed. Strictly speaking, perhaps this property forms no part of the capital stock, as that phrase is defined for certain purposes by courts and text-writers.

Thus Cook, in his work on "Stock and Stockholders," chapter first, paragraph three, says :—" Capital stock is the sum fixed by the corporate charter as the amount paid in or to be paid in by the stockholders for the prosecution of the business of the corporation, and for the benefit of corporate creditors in case the corporation becomes insolvent." He adds however, in the same paragraph, the following :—" Occasionally, under the terms of taxation statutes which have been drawn without regard to the technical meaning of words, the courts will construe the capital stock to mean all the actual property of the corporation."

In framing our own taxation laws the capital stock of a corporation was not regarded in the strict technical sense, as a fixed sum of money, paid in or agreed to be paid in by the stockholders, but it was regarded as consisting of all the substantial property, real and personal, owned and possessed by the corporation. Such, we think, was the view taken of this matter by our own court in the following cases :—*New Haven* v. *City Bank*, 31 Conn., 106; *Nichols* v. *New Haven & Northampton Co.*, 42 id., 103; *State* v. *Housatonic Railroad Co.*, 48 id., 44; *Batterson* v. *Town of Hartford*, 50 id., 558.

In the case at bar the shares of stock of the insurance company are taxed in the hands of its stockholders, under the statute, at their market value. And it is admitted that " these assets, which constitute the safety fund, constitute a very important factor in determining the market value of the stock." As our law now is, a tax upon the market value of the stock of a corporation is a tax upon the market value of the property of the corporation. " The stock of a corporation represents its property, and the stock is valuable just in proportion to the amount of such property. The market value of the stock of a corporation therefore is the market value of all the property of the corporation in which the stock has been invested. If a corporation has not property enough to represent its entire stock, the stock is depreciated in value ; it is below par. If the corporation has more property than enough to represent its entire stock,

the stock is at a premium in the market; it is above its par value. Hence a tax imposed upon the market value of the stock of a corporation must be a tax imposed upon the market value of the property of the corporation which represents the stock." *Nichols* v. *New Haven & Northampton Co.*, 42 Conn., 120.

In thus causing the shares of stock to be assessed to their respective owners, the law has already assessed the very property to the share-holders which the town now seeks to have assessed against the Security Company. This would manifestly result in double taxation, which is always to be avoided, unless the law plainly and imperatively imposes it. *Osborn* v. *N. York & N. Haven Railroad Co.*, 40 Conn., 491.

This insurance company in this matter of taxation has been treated by all concerned as a stock company, so called, and not as a company doing business in any way upon the plan of mutual insurance. Regarded in that light, and so far as the questions arising in this case are concerned, we think the property in question here ought not to be assessed in the name of the trustee. The claim of the insurance company is not that the property is exempt from taxation, but that it is already taxed and ought not to be subjected to double taxation. We are inclined to take this view of the case.

For purposes of taxation, then, we think the property constituting the safety fund is part of the capital stock; and that under the law as it now is, it is taxed in taxing the shares of stock at their market value. We therefore advise the Superior Court to grant the prayer of the application, and to set aside the whole of the said assessment list made out against the Security Company, trustee, as unauthorized and void.

In this opinion the other judges concurred.