WELLS, Respondent, vs. THE GREEN BAY & MISSISSIPPI CANAL COMPANY and others, Appellants.

*May 18 — June 20, 1895.*

*Corporations: Full-paid stock: Consideration: Conveyance of property: Calls and assessments: Action to compel delivery of certificate: Limitations: Parties: Costs: Appeal.*

1. The purchasers at a foreclosure sale of all the property and franchises of a corporation formed a new corporation, as authorized by a special statute (ch. 289, Laws of 1861), by filing a certificate of incorporation, in which directors were named and the amount of the capital stock was stated to be $1,000,000, divided into 10,000 shares of $100 each. This certificate contained no provision as to stock subscription or for issuing any stock, nor did it define in any manner the powers of the directors; but the statute provided that special stock, in addition to the capital stock mentioned in said certificate, might be issued in payment of such obligations of the former corporation as the new corporation, by vote of its stockholders, might assume to pay. The property purchased at the foreclosure sale and conveyed to the new corporation had cost more than $1,000,000, though it was bid off for a sum considerably less. After incorporating, the purchasers executed an instrument stating their respective contributions to the purchase and the proportionate interest of each in all the property and franchises of the new corporation. There being nothing in the statute under which the new corporation was organized, or in the certificate of incorporation, to indicate a contrary conclusion, it is *held* that, in consideration of the conveyance to the corporation of the property purchased by the incorporators, its common stock was fully paid to the entire amount specified in such certificate, and that each of the incorporators was entitled to a proportionate share thereof corresponding to his contribution to the purchase.

2. The conveyance of the property purchased to the new corporation so organized was a sufficient consideration, as between the stockholders and the corporation, for the issue of the stock as full-paid.

3. In the absence of any special authority conferred upon them, or of consent thereto, the directors had no power to make calls or assessments upon such stock.

4. There having been no adverse claim or holding of the shares to which one of the incorporators was entitled until the corporation denied his right to them (in this case more than twenty years after the incorporation), until then he had no right of action to compel delivery of the proper certificate, and the statute of limitations did not begin to run; and, his action having been commenced within one year thereafter, he did not lose his legal right by estoppel for laches. *Rogers v. Van Nortwick*, 87 Wis. 414, distinguished.

5. The directors of the corporation were proper, though not necessary, parties to the action to compel delivery of the certificate of stock.

6. Directors joined as defendants with the corporation in such case cannot complain on appeal that they were, jointly with the corporation, charged with costs, where, before the appeal was taken, the judgment for costs against them had been released.

7. The corporation cannot complain in such case that the amount which plaintiff was adjudged to pay as calls on the stock, as a condition of obtaining the certificate, should, on a proper computation, have been larger, where the calls were absolutely void.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Affirmed.*

This action was brought against the corporation defendant and its directors, to compel the delivery to the plaintiff of ninety-two shares of the stock of the company. The amended complaint stated, in substance, that the plaintiff, with Horatio Seymour and others named, became the purchasers of all the rights, property, and franchises of the Fox & Wisconsin Improvement Company, under and in pursuance of ch. 289, Laws of 1861; ch. 535, Laws of 1865; ch. 572, P. & L. Laws of 1866,— which company had been organized under ch. 98, Laws of 1853,— at a foreclosure sale of its property and franchises under a certain judgment in the action of Spaulding and others against it and other de-

fendants, rendered February 4, 1864; and that such purchasers, August 15, 1866, under said ch. 289, Laws of 1861, became duly incorporated, with the rights, powers, franchises, etc., in said acts specified, under the name of the *Green Bay & Mississippi Canal Company*, one of the defendants in this action, the capital stock of said company being $1,000,000, divided into 10,000 shares of $100 each, with nine directors for the first year named in said certificate; and, by direction of the court in the foreclosure action, all said property, rights, and franchises were conveyed to the defendant corporation, August 18, 1866; that on the 11th of September, 1866, said purchasers executed and sealed an instrument by which they mutually agreed and declared the respective contributions of each to the purchase, and the amount of their respective interests in all the property and franchises of the corporation defendant, from which it appeared that the total contributions were $326,086.30, or 326 shares, the amount of the plaintiff's contributions being $3,275.12, or three shares, equal to $\frac{3}{326}$, entitling him to ninety-two shares of the 10,000 shares of stock, fully paid; that the lands purchased at said sale, and conveyed to the corporation, were apportioned among the said purchasers, and the defendant company, December 10, 1866, conveyed to the plaintiff his $\frac{3}{326}$ part; that, pursuant to the instrument of September 11, 1866, the company had issued its certificates of shares of said stock, according to such allotment, but had not issued any to the plaintiff, though he was entitled to ninety-two shares, then in the hands of the company; that early in 1890 the plaintiff learned that the company denied that he owned any interest in it, and that *A. L. Smith*, treasurer and one of the directors, claimed to own said ninety-two shares, and that he had paid the company $1,380 for them, being the amount of fifteen per cent. thereon, claimed to be due to the company, and was attempting to get a certificate of said shares issued to himself; that plaint-

iff had never sold or assigned his interest to *Smith*, and that *Smith* had, in fact, never paid anything for it; that in 1890 the plaintiff learned that, by reason of $150,000 paid to the company by the United States for the transfer to it of certain rights by the company, there was a dividend of fifteen per cent. upon the stock of the company; and that the moneys claimed to have been paid by *Smith* to the company were, in fact, the plaintiff's share of said dividend.

The plaintiff alleged an offer or tender, before action, of any sum due and unpaid on said ninety-two shares, and a demand of the certificate therefor, but the defendant and its directors refused to accept said offer or any money on that account, and denied that he was entitled to said shares or had any interest in them, claiming that they had been forfeited; that the plaintiff had not been informed of such claim until 1890, and denied the same or that his right thereto had been cut off; that no certificates had been issued therefor to any one else; and that, while he denied there was any sum legally owing and unpaid upon his interest in said company, he was ready and willing to pay whatever balance, if any, should be due, so as to make his contributions the same as had been made by all others to whom stock had been issued, on being informed of the amount. He prayed that he might be adjudged the owner of $\frac{3}{326}$ interest in said company, and that defendant and its officers be required to recognize his rights as such, and that the court ascertain any sum he should pay to the company, and upon payment thereof the company be required to deliver a proper certificate of said shares of stock, etc.

The answer admitted that the plaintiff became entitled to $\frac{3}{326}$ of the property, rights, and franchises of the company, including its stock, and alleged that defendant had declared, December 11, 1866, that he was entitled, for his proportion, to ninety-two shares, in case he chose to pay for and take the same; that he chose not to do so; that the full

amount to be paid by various purchasers was twenty per cent. of the par value of the stock, and a call therefor was made December 31, 1868, and notice given to the plaintiff and others, before March 4, 1869, which the plaintiff had refused to pay up to May 9, 1890; that, for that reason, he was not entitled to any portion of the money received in 1872 from the United States, and said shares had never been issued, but remained in the treasury of the company. And the answer denied that the plaintiff was or had been the owner thereof, but admitted the offer which the plaintiff alleged that he had made, to pay, etc.; that the defendant company and its directors had relied on his refusal to pay for his stock, and his right to it had been forfeited. It was alleged that an assessment was made on the stock of the company of twenty per cent. in 1866, to maintain its water way and improvements; that the burdens of the company were so great that its stock was practically valueless, and, prior to the year 1890, was not at any time equal in value to the assessments which had been made on it; that from 1872 to 1888 it was not worth in the market or for sale the cost of the same to those who had paid twenty per cent. of its par value, after crediting it with the amount received from the United States as the purchase price of the water way; that in 1888 the stock became valuable on account of the development of manufacturing by the water power in the Fox river, brought about by the stockholders of the company, and became, for the first time, of a value equal to its cost; that this was the result of many years of management and experiment, with doubtful outlook, by the stockholders, and the plaintiff then sought to take advantage of it and of their efforts, ventures, and labors. It was insisted that the plaintiff was estopped from claiming the stock, and that whatever cause of action he ever had accrued prior to March 4, 1869; that the present action was commenced in December, 1890, and his claim in the premises was barred.

by the statute of limitations, particularly by R. S. sec. 4221,. subd. 4.

The defendant company, as well as the directors, had demurred to the amended complaint, on the grounds (1) that. the plaintiff had a perfect remedy at law; (2) that it did not state facts sufficient to constitute a cause of action; (3) that the action was barred by the statute referred to, and by subd. 3, sec. 4222. The demurrers were stricken out as frivolous, and the directors did not answer over.

It was found by the court that all the allegations of the plaintiff's amended complaint had been proved; that the property purchased by him and his associates, and conveyed by them to the defendant company, had cost, exclusive of lands granted · by the state and the United States, over $1,000,000, and that the capital stock in the company, of $1,000,000, was apportioned September 11, 1866, according to the proportionate share of money paid by each of them to make the purchase, and ninety-two full-paid shares were assigned to and became the property of the plaintiff, but no certificate thereof had been issued; that the company in 1872 sold and transferred to the United States water ways, etc., for $155,000, $150,000 of which was apportioned in dividends to stockholders; that the plaintiff's *pro rata* share, being $1,380, had not been paid him, but was retained by the company, of which he had no notice until 1890; that the directors made four assessments of five per cent. each on his stock, December 4, 1866, August 2, 1867, April 16, 1868, and December 31, 1868; that all of the stockholders, except. the plaintiff and one Binninger, settled with and paid their assessments, and May 13, 1890, *A. L. Smith,* who was the assignee of Binninger's 122 shares, settled with the company for the said assessments thereon until then unpaid, by paying the balance due for said assessments over and above the. amount received from the United States, charging interest from the time when they were made, respectively, the bal-

ance being $1,772.05, whereupon the company issued to said Smith a certificate of stock for said 122 shares full-paid; that, accordingly, the amount equitably due the company from the plaintiff on said assessments, on the 1st of May, 1890, over and above the sums received by the company on the 8th day of December, 1889, was $1,352.86, of which he made a formal tender on that day.

The court held that the plaintiff was the owner of ninety-two full-paid shares of the capital stock of the company; that he was entitled to a certificate of stock, upon paying said sum of $1,352.86; and upon receipt of said sum the defendants issue such certificate in the form adopted and in use by the company. Judgment was rendered accordingly. The defendants, having alleged numerous exceptions to the findings, appealed.

For the appellants there was a brief by *Hooper & Hooper*, and oral argument by *Moses Hooper*.

For the respondent there was a brief by *Fish & Cary*, and oral argument by *J. T. Fish*.

PINNEY, J. 1. The vital point in this case is whether the plaintiff's ninety-two shares of stock in the defendant corporation were full-paid when the corporators had conveyed or caused to be conveyed to the company the property they had purchased at the foreclosure sale, and had executed the declaration and agreement of September 11, 1866, stating and defining their respective contributions to and proportionate interests in the property and franchises of the company. The plaintiff's interest was therein stated to be $\frac{3}{326}$ of the entire property, or three shares, equal to ninety-two shares of the capital stock of the corporation.

Provision having been made for the completion of the works of improvement and the payment of the evidences of state indebtedness, as provided by ch. 289, Laws of 1861, the purchasers, as authorized by the second section of that

act, sealed and acknowledged a certificate of incorporation, and filed it with the secretary of state August 15, 1866, by which they declared their acceptance of the rights, franchises, etc., granted and conferred by that act, and that they united and formed themselves into a corporation under it for the purpose and with the powers therein expressed, " that the capital stock of the corporation so formed and created is $1,000,000, divided into 10,000 shares of $100 each." It named nine directors, and made provision for partition among them of certain lands, granted by the state and by the United States and bid off at said sale, not required for the public improvement of the company and for the purposes of its water power. This certificate or agreement of incorporation did not contain any provisions on the subject of stock subscription or for issuing any stock, either common, preferred, or special, nor did it or the act define in any manner the powers and authority of the directors. The agreement as to the division and conveyance to the said purchasers of their respective proportionate shares of said lands was carried into effect upon the basis of the declaration of September 11, 1866, and the plaintiff received a conveyance of his proportionate share, $\frac{3}{326}$ of the whole. It is a conceded fact that, exclusive of these lands, the property retained by the corporation, and so conveyed to it, consisting of canals, improvements, etc., had cost over $1,000,000, and that the lands thus divided had been bid off at about $135,000 of the purchase price of the entire property, which was $326,086.30.

Subsequently, and on the 26th of September, 1866, the *directors* passed resolutions, in substance, that the whole capital stock be distributed among the incorporators in proportion to their cash contributions for the purchase of the property; that no scrip or certificate should be issued for such stock until $5 per share should be paid in by the corporator or his assigns, on or before December 4, 1866, when

a certificate should be issued to the person entitled thereto that eighty-five per cent. had been paid on account of said stock, and that the same "is subject to further calls of $15, in the aggregate, per share, in not more than $5 at a time," and if the payments thus required and to be required were not made within sixty days after notice and demand by the treasurer, then such stock should be forfeited to the use of the company. Subsequent calls to the first were made, with it, in all, amounting to twenty per cent. April 16, 1868, the directors passed a resolution reciting that two calls had been made on the stock standing in the names of A. G. Binninger and of the plaintiff, and that, if not paid with interest within ten days after notice by mail from the president, the said stock "should become and is hereby declared forfeited to the company."

The imposition of $20 per share is pleaded and sought to be maintained, both on the ground that it was for lawful calls on the stock, and that it was a valid assessment. It does not appear that there was any stock subscription prepared or made, or that the corporation had passed any by-laws. The contract relations between the corporation and its stockholders depend wholly on the certificate of incorporation signed and acknowledged by them and the instrument of September 11, 1866. It does not appear that they ever after acted in an aggregate capacity on that subject, or that they ever delegated any authority to the directors to act for them. The act under which the corporation was organized (Laws of 1861, ch. 289, sec. 2) provided that the purchasers at the sale might form a corporation "by filing in the office of the secretary of state a certificate declaring the name of the said corporation, the amount of the capital stock and the number of shares into which the same shall be divided, and what portion, if any, shall be entitled to a preference in dividends or otherwise, the number of the directors and the names of the directors for the first year; . . . and

upon the filing of such certificate the persons who shall have signed the same shall be a body politic and corporate, by the name stated in said certificate. . . . The said corporation shall also have power to create special stock, in addition to the capital stock mentioned in the said certificate, and to issue the same in payment and discharge of such obligations of the said Fox & Wisconsin Improvement Company as the said corporation may, by the consent in writing or by vote of a majority in interest of its stockholders, assume to pay and discharge, which special stock shall be entitled to dividends in such cases, at such times, and to such amounts, and to such privileges only, and shall be subject to such conditions, restrictions and liability to assessments and forfeiture as shall be prescribed and provided by the act or resolution of said corporation creating such stock." After the apportionment and conveyance of its lands, as provided, the resources and prospects of the corporation were in such a depressed condition that its stock was not worth, in the market or for sale, to exceed five or six per cent. of its face value, although it had power to issue preferred stock, which is usually issued by companies which have expended their original capital for the purpose of obtaining other capital, and the affairs of the corporation are in that situation that the stockholders are unable or unwilling to risk any more money in the enterprise, but yet are willing to give those who will do so a preference as to future profits (2 Beach, Priv. Corp. § 497; *Lockhart v. Van Alstyne*, 31 Mich. 76; *New York, L. E. & W. R. Co. v. Nickals*, 119 U. S. 308, 311); and it had the power to create "special stock" subject to assessment, by consent in writing or vote of the stockholders. There is nowhere, either in the statute under which the corporation was organized, or in its articles of organization, anything to indicate any other conclusion than that the common stock of the company was to be regarded as full-paid, in consideration of the conveyance to the company

of the property purchased by the incorporators. It seems clear that the stock was based on the property so conveyed at $1,000,000 in 10,000 shares of $100 each. The stock contract between the incorporators was embodied in their certificate or agreement, and the plaintiff became and was the absolute legal owner of ninety-two shares of stock, the equivalent of his $\frac{92}{10000}$ interest in the entire property, and entitled to a certificate of that fact immediately upon the organization of the company. No authority was conferred by the act under which the company was organized to raise any capital other than that so contributed, except by preferred or special stock. There is nothing to show that it was ever intended by the incorporators, as such, that they should ever pay any other sum or consideration for the shares to which they became respectively entitled than the transfer to the company of the property purchased and owned in the proportion stated, except that, perhaps, they had an option to issue some part thereof as preferred stock; but no such action appears to have been taken.

The conveyance to the company was, in any event, a sufficient consideration, as between the stockholders and the corporation, for the issue of the stock as full-paid. None but creditors could be heard to object to its adequacy, if, in such case as the present, that question could be mooted at all, and then only on the ground of fraud. Beach, Priv. Corp. §§ 559, 561; *Scovill v. Thayer*, 105 U. S. 153. There is a distinction between the capital and the capital stock of a corporation. The capital of a corporation is the property or means which the corporation owns, and it may vary in amount, while the capital stock is fixed, and represents the interests of the stockholders, and is their property. *Van Allen v. Assessors*, 3 Wall. 573, 584; *Wetherbee v. Baker*, 35 N. J. Eq. 505; *People v. Comm'rs*, 4 Wall. 244; *People ex rel. Union T. Co. v. Coleman*, 126 N. Y. 433, 437; *Burrall v. Bushwick R. Co.* 75 N. Y. 211. In *Bailey v. Clark*, 21

Wall. 286, it was said by FIELD, J., that: "The term 'capital' applies only to the property or means contributed by the stockholders as the fund or basis for the business or enterprise for which the corporation or association was formed." The property conveyed to the corporation became its capital; and, as there was no provision or agreement by which the incorporators or others were to make other or further contributions, except upon the issue of preferred or special stock, we hold that the stock of the corporators was full-paid, to the entire amount specified in the certificate of incorporation. The company had no right to withhold from the plaintiff a certificate of his ninety-two full-paid shares. For want of special authority for that purpose, the directors had no power to make calls or assessments on his stock, or to subject it to sale or forfeiture for nonpayment. He had not entered into any such contract, or consented to or conferred upon them any authority for that purpose; and without such consent or authority such calls or assessments were absolutely void. 1 Morawetz, Priv. Corp. §§ 55, 56, 122, 130, 131; *Perrin v. Granger*, 30 Vt. 595; *In re Long Island R. Co.* 19 Wend. 37. Liability to calls is the result of contract, such as an agreement of subscription or the like. The power to make assessments is wholly statutory. Beach, Priv. Corp. § 590. The evidence does not show that the plaintiff ever consented to or affirmed the action of the directors.

2. It was not essential to the title of the plaintiff to his ninety-two shares that he should have had a certificate of his ownership of them. It was a convenience, not a necessity. There was no adverse claim or holding of the shares until the defendant corporation denied his right to them, less than a year before this action was commenced. Until then he had no right of action to compel the execution and delivery of the proper certificate. There is no ground for saying that he had lost a strictly legal right to the shares

by estoppel for laches, or that it had been barred by the statute of limitations. The title to the shares has been all the time in the plaintiff, and upon demand it became and was the duty of the defendant to furnish him with the appropriate evidence of it, independent of the records of the company. For these reasons, the case of *Rogers v. Van Nortwick*, 87 Wis. 414, is not applicable. As stated by CAMPBELL, J., in *Kobogum v. Jackson Iron Co.* 76 Mich. 498: " The corporation held all its property in trust for the parties interested, and whether treated as tenants in common or as stockholders could make no particular difference. There is no law which terminates the interest of a stockholder without some adverse action asserting its extinguishment or denying its existence, or which compels him to seek aid from courts when no such adverse position is taken."

3. The directors, though not necessary, were proper parties defendant, to enable the plaintiff to obtain discovery under sec. 4096, R. S. Story, Eq. Pl. (10th ed.), § 235; *Wood v. Union G. C. B. Asso.* 63 Wis. 9. If it appeared that they refused from improper motives to direct the issue of the certificate, they might be charged with costs. The appeal is jointly by all the defendants, and it appears all were jointly charged with costs; but before it was taken the judgment for costs against the directors had been released, and they cannot now complain of the judgment.

4. At or about the time the plaintiff offered to pay the company such sum as would make his contribution substantially equal to those of other stockholders, one of the stockholders, *Mr. Smith*, an officer and director of the company, was allowed a certificate, as assignee of Binninger, for the 122 shares of Binninger's stock, upon which no part of the twenty per cent. calls had been paid, upon the payment to the company of $14.52½ per share,— in all, $1,772.52. The circuit court, acting doubtless upon the ground that equality is equity, and that directors who are trustees for all would

not make any unfair discrimination between the stockholders, made it an equitable condition of giving judgment for issuing to the plaintiff a certificate of his ninety-two shares that he should first pay to the defendant company, or to its use, at the same rate on his shares,— in all, the sum of $1,335.86. It is now claimed that, upon a proper computation, a much larger amount should have been adjudged to be paid by the plaintiff; but, as the alleged calls or assessments were absolutely void, we do not think the defendant company is in any position to complain of the judgment in this respect. It follows that the judgment of the circuit court is correct.

*By the Court.*— The judgment of the circuit court is affirmed.