## UNION TRUST CO. v. RADFORD.

1. USURY—TAXES—PAYMENT BY MORTGAGOR—TRUST COMPANY.

Defendant and his wife executed to complainant trust company a mortgage bearing interest at six per cent. and providing in addition thereto that the mortgagors should pay all taxes and assessments levied upon the lands or upon or on account of the mortgage or indebtedness secured. Complainant claimed and introduced testimony tending to prove that it paid no taxes on its mortgages, at the time the conveyance was executed, for the reason that it paid taxes on capital stock which was invested in part in mortgages, that complainant never intended to collect and had never demanded more than the lawful rate of interest. It was conceded that the combined city and county taxes had exceeded 1.8 per cent. for a considerable period of years. Under the act authorizing the incorporation of trust companies, it was provided that such company should deposit with the State treasurer not less than fifty per cent. of its capital stock in bonds

and Michigan mortgages, that such corporation should have power to loan money on real estate and collateral security, that so much of the capital stock as must be placed on deposit might be invested in mortgages or other security upon property worth double the amount secured (2 Comp. Laws, § 6157 *et seq.*). 1 Comp. Laws, § 3824, provides that all property, real and personal, not expressly exempt from taxation, shall be subject to taxation, and section 3831 makes all shares of corporations, when the corporate property is not exempt, subject to taxation; section 3834 exempts from taxes the property of corporations that are required to pay specific taxes. *Held*, that the mortgage was taxable as a part of the capital of complainant and was therefore usurious. 2 Comp. Laws, § 4857.

2. SAME—CONTRACTS—CONSTRUCTION—MORTGAGES.

Although the question of intent is to be taken into account in determining whether a contract is usurious, parties must be deemed to have intended the result expressed by clear and unambiguous language employed in the instrument.[1]

ON REHEARING.

USURY—CAPITAL—INVESTMENTS.

Construing the statute as to usury in the light of 2 Comp. Laws, § 6168, providing that real estate of a trust company shall be taxed as other real estate where it is situated, and the residue of its capital shall be taxed as personal property, in which the word capital is not meant to include all the property of the corporation, such a purchase money mortgage as the one in question must be held to represent an investment of capital, entering into the residue upon which the trust company is liable to pay taxes, and that, therefore, complainant paid the tax on account of such mortgage so as to render the mortgagor liable to repay the amount thereof. Presumptively the mortgage represented an investment of its capital. Property that represents capital stock is the equivalent of capital stock for purposes of taxation.

Appeal from Wayne; Mandell, J. Submitted June 21, 1911. (Docket No. 12.) Decided March 12, 1912.

[1] As to the right of one to testify as to his intent, see note in 23 L. R. A. (N. S.) 391.

Rehearing granted June 1, 1912. Former opinion affirmed June 2, 1913.

Bill by the Union Trust Company against George W. Radford and Laura F. Radford for the foreclosure of a mortgage. From a decree for complainant, defendants appeal. Reversed.

*Russel, Campbell, Bulkley & Ledyard (Charles H. L'Hommedieu,* of counsel), for complainant.

*Thomas A. E. Weadock,* for defendants.

BLAIR, J. This is an appeal by the defendants, George W. Radford and Laura F. Radford, from a decree for the foreclosure of a mortgage. This mortgage, which was on a "committee form," filled in entirely in the handwriting of defendant George W. Radford, was executed on August 21, 1901, by both defendants, to secure to the complainant the payment of a note for $1,500 in two years from its date, with interest at six per cent. per annum, and contained a clause whereby—

"The said mortgagors, within forty days after the same became due and payable, will pay all taxes and assessments which shall be levied upon the said lands, or upon, or on account of this mortgage, or the indebtedness secured hereby, or upon the interest or estate in said lands created or represented by this mortgage, or by said indebtedness, whether levied against the said mortgagors, their legal representatives or assigns, or otherwise; and said mortgagors hereby waive any and all claim or right against said mortgagee, its successors or assigns, to any payment or rebate on, or offset against, the interest or principal of said mortgage debt by reason of the payment of any of the aforesaid taxes, or assessments."

On July 18, 1906, the note and mortgage were extended as to their time of payment to August 21, 1909; all the other conditions and terms remaining the

same, which extension was signed by the Union Trust Company and defendants Radford.

On May 6, 1909, this bill of complaint was filed, to which defendants filed an answer presenting the defense that the note and mortgage were usurious in that the interest reserved, plus the taxes on the mortgage, exceeded the legal contract rate of seven per cent.

Was the contract usurious? The circuit court answered this question in the negative, and the correctness of his conclusion presents the only question which we find it necessary to consider.

Complainant's secretary testified:

"The Union Trust Company pays no taxes upon its mortgages for the reason that under the law under which it is organized it pays on its stock. It did not pay taxes on its mortgages at the time this mortgage was made, and it has never, during the period of my relationship with the company (some 16 years), paid such taxes. It was not the intention of the Union Trust Company at the time this mortgage was made to collect a usurious rate of interest from Mr. Radford. The Union Trust Company has never made any demand on Mr. Radford to pay any taxes on the mortgage indebtedness because no such taxes were payable. [The last four answers were taken against defendant's objections on the grounds of immateriality, irrelevancy, incompetency, and calling for conclusions of the witness.] * * * The trust company, under the law of its organization, the State law, paid on its capital stock, less its showing in real estate, whatever it may be at the time. * * * It has paid large sums for taxes on its capital stock and paid taxes for its trusts. [It is conceded by complainant's counsel that the city tax rate in the city of Detroit has exceeded one per cent. since 1890, and that the officers of the Union Trust Company knew what the tax rate was upon Detroit property from year to year. It is also conceded by complainant's counsel that the combined tax rates for city and county upon Detroit property has at all times since 1890 exceeded 1.8 per cent. It is conceded by counsel for defendant that all the money loaned by the trust company upon this note

and mortgage was used in payment for the property covered by said mortgage.]"

The position of complainant is stated in the brief as follows:

"From McMechan's testimony, which is uncontradicted by the defendants, who offered no testimony on their own behalf, it appears that, at the time this contract was made, the complainant was not assessed upon its mortgages. Section 6168 of the act under which the complainant is organized (chapter 162, 2 Comp. Laws) is as follows:

" 'The shares of stock of the corporation established under this act shall be deemed personal property, and shall be transferable only on the books of such corporations in such manner as their by-laws shall prescribe. All real estate owned by any such company may be taxed as other real estate in the city, village or township where the same may be situated, and the residue of its capital shall be taxed as personal property; but the assessment thereof for taxation shall not be at a greater rate than is assessed on money capital in the hands of individual citizens in the same city, village or township.'

"Two classes of property are by this section made assessable for taxing purposes: (1) Real estate, and (2) capital stock. By necessary inference all other property, including mortgages, is exempt. Acting under the provisions of this section, the taxing officers have always exempted the mortgages of the trust company. It is clear, then, that the officers of the complainant could not have intended by the inclusion of this printed clause in the mortgage to compel the mortgagors to pay a larger rate of interest than six per cent., because they knew that their mortgages were exempt from taxation and no charge could ever be made against them, under this clause, which they could properly ask the mortgagors to pay in addition to the reserved interest of six per cent. That this is true is further evidenced by McMechan's testimony that during all the period when the mortgage was in force no taxes were paid upon it and no charge was made against the mortgagors on that account. The fact that the tax rate at all times exceeded one per cent., and that the officers of the Union Trust Com-

pany knew, from year to year, what the tax rate was (which was conceded by counsel for complainant), does not show any intent to exact usury, for the reason that, while the officers knew what the general tax rate was, they, at the same time, knew that it had no application to their own mortgages, which were exempt."

Section 6157, 2 Comp. Laws, provides in part:

"As soon as possible, and not later than six months, after any such company has commenced business under the provisions of this act, it shall deposit with the State treasurer of this State not less than fifty per cent. of the amount of its capital stock, nor more than two hundred thousand dollars in amount; such deposit to be in bonds and mortgages, or notes and mortgages on unincumbered real estate within the State of Michigan, worth double the amount secured thereby, or public stocks and bonds of the United States, or any State of the United States, that has not defaulted on its principal or interest within ten years, or of any organized county or township, or incorporated city or village, or school district, in this State, or in any other such State, duly authorized to be issued," etc.

By section 6164:

"Such corporation shall have power to loan money upon real estate and collateral security, and execute and issue its notes and debentures, payable at a future date, and to pledge its mortgages on real estate and other securities as security therefor."

By section 6165 the corporation may purchase, hold, and convey real estate:

"*Second.* Such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its business.
"*Third.* Such as it shall purchase at sales under judgments, decrees or mortgages held by it, but such corporation shall not bid at any such sale a larger amount than is necessary to satisfy its debt and costs. * * * No real estate acquired in the cases contemplated in the second and third subsections above shall be reckoned as an asset for a longer time than five years."

Section 6166 provides:

"The directors of any such corporation shall invest so much of the capital stock as is herein provided to be deposited in the State treasury, in bonds secured by mortgages, or notes and mortgages on unincumbered real estate within the State of Michigan, worth double the amount secured thereby, or in public stocks and bonds of the United States, or any State of the United States that has not defaulted on its principal or interest within ten years, or of any organized county or township, or incorporated city or village, or school district in this State, or in any other such State, duly authorized to be issued. And such board of directors may invest or loan the balance of its capital stock and other moneys received by such corporation in trust, in bonds secured by mortgages, or notes and mortgages on unincumbered real estate within the State of Michigan, worth double the amount secured thereby, or in public stocks and bonds of the United States, or any State of the United States that has not defaulted on its principal or interest within ten years; or of any organized county or township, or incorporated city or village, or school district in this State, or in any other such State, duly authorized to be issued, or in such real or personal securities as they may deem proper."

Section 6176 provides:

"Whenever it shall appear from the report of any such corporation, or the commissioner shall have reason to believe that the capital of any company is impaired or reduced below the amount required by law, it shall be the duty of the commissioner and he shall have power to examine said company and ascertain the facts, and in case he finds such impairment or reduction of capital to require such company to make good the deficiency so appearing or found to exist."

Section 3824, 1 Comp. Laws, provides:

"That all property, real and personal, within the jurisdiction of this State, not expressly exempted, shall be subject to taxation."

Section 3831, subds. 6, 7, and 13, provides that, for the purposes of taxation, personal property shall in-

clude (subdivision 6) "all credits of every kind," etc.; (subdivision 7)—

"All shares in corporations organized under the laws of this State, when the property of such corporations is not exempt, or is not taxable to itself, or when the personal property is not taxed;" (subdivision 13) "all other personal property not herein enumerated, and not especially exempted by law."

Section 3834 provides:

"The property of corporations paying specific taxes shall be exempt, as to the property, covered by such taxation, except when otherwise provided by law. All other property of such corporations shall be taxed under this act."

No statute has been called to our attention, nor have we been able to find any, exempting any part of complainant's property from taxation, unless, as contended by complainant, section 6168 brings about such result by necessary inference.

While the terms "capital" and "capital stock" are often, and perhaps generally, used interchangeably (by some courts held to designate the nominal capital stock of the corporation, and by others to mean the property which the company owns), we are satisfied that in the section under consideration the word "capital" was used to signify all of the property owned by the corporation, both real and personal, within the meaning of the taxing laws. The terms of the incorporating statute, read in connection with the general tax law, appear to us to compel this conclusion.

The corporation's securities are treated in the sections quoted as part of the capital stock and as such are deposited with the State treasurer. The real estate purchased or acquired by foreclosure is treated as part of the capital stock to be taxed as other real estate is taxed generally; and the "residue of its capital" (that is, the portion of its capital left after deducting its real estate capital) is to be taxed as personal prop-

erty is generally taxed, at its "true cash value." We hold, therefore, that the mortgage was taxable as part of the capital of the complainant. *People* v. *Roberts,* 154 N. Y. 1 (47 N. E. 974) ; *Excelsior Water & Mining Co.* v. *Pierce,* 90 Cal. 131 (27 Pac. 44) ; *Security Co.* v. *Town of Hartford,* 61 Conn. 89, 101 (23 Atl. 699) ; 2 Beach on Private Corporations, § 465; *Wells* v. *Canal Co.,* 90 Wis. 442 (64 N. W. 69) ; *Citizens' Street Ry. Co.* v. *Common Council,* 125 Mich. 673 (85 N. W. 96, 86 N. W. 809, 84 Am. St. Rep. 589) ; *Stroh* v. *City of Detroit,* 131 Mich. 109 (90 N. W. 1029). But, even assuming that the term "capital" is synonymous with "capital stock" in the most restricted sense, still the complainant's mortgages represented capital stock and were indirectly taxed as part of the capital stock. *Bank Tax Cases,* 2 Wall. (U. S.) 200, 210; *Tennessee* v. *Whitworth,* 117 U. S. 139 (6 Sup. Ct. 649) ; *Atlantic, etc., R. Co.* v. *Allen,* 15 Fla. 637, 660; *Connersville* v. *Bank,* 16 Ind. 105.

The real estate in which the money capital was invested by the company constituted part of its capital subject to taxation; the securities in which the money capital was invested constituted a part of the residue of its capital. It is further to be observed that, in case of a transfer of the note and mortgage, the purchaser thereof would be entitled to enforce payment in accordance with the terms of the contract, except for the statute.

It is true, as contended by counsel for complainant, that the question of intent is to be considered in determining whether or not a contract is usurious; but where, as in this case, the contract is unambiguous and its legal meaning clear, the parties must be deemed to have intended the result expressed by the contract. *Rosen* v. *Rosen,* 159 Mich. 72 (123 N. W. 559, 134 Am. St. Rep. 712). We therefore hold that the contract was usurious. *Green* v. *Grant,* 134 Mich. 462 (96 N.

W. 583) ; *Estey* v. *Loan Ass'n,* 131 Mich. 502 (91 N.
W. 753) ; *Stack* v. *Cedar Co.,* 151 Mich. 21 (114 N. W.
876, 16 L. R. A. [N. S.] 616, 14 Am. & Eng. Ann. Cas.
112) ; *Rosen* v. *Rosen, supra.*

It follows that at the time the bill was filed the con-
tract had not matured and the bill was therefore pre-
maturely filed.

A decree will be entered dismissing the bill, with
costs of both courts to defendants.

### ON REHEARING.

*Russel, Campbell, Bulkley & Ledyard (Henry M.
Campbell* and *Henry Ledyard,* of counsel), for com-
plainant.

*Butterfield & Keeney, amici curiæ,* for Michigan
Trust Co.

*George W. Radford, in pro. per.*

OSTRANDER, J. Upon the application of complain-
ant, the cause has been reargued and the principal
question involved has again been considered. A refer-
ence to our former opinion will make any preliminary
statement of facts unnecessary. The statute, the ap-
plication and enforcement of which is demanded by the
defendants (appellants) is 2 Comp. Laws, § 4857,
which reads:

"No bond, bill, note, contract or assurance, made or
given for or upon a consideration or contract, whereby
or whereon a greater rate of interest has been, directly
or indirectly, reserved, taken or received, than is al-
lowed by law, shall be thereby rendered void; but in
any action brought by any person on such usurious
contract or assurance, except as is provided in the fol-
lowing section, if it shall appear that a greater rate of
interest has been, directly or indirectly, reserved,
taken or received, than is allowed by law, the defend-
ant shall not be compelled to pay any interest thereon."

The contract in suit reserves annual interest at the

rate of 6 per cent. The covenant in the mortgage, recited in the former opinion, obligates the mortgagors to pay taxes "which shall be levied upon the said lands or upon, or on account of this mortgage, or the indebtedness secured hereby, * * * whether levied against said mortgagors * * * or otherwise."

It is the contention of defendants (appellants) (an affirmative defense set up in their answer) that it is made to appear upon this record that an illegal rate of interest is reserved. The case has an interest compared with which the amount actually at stake is inconsiderable. It involves, as our former opinion shows, an examination of the law under which complainant is organized in connection with general laws governing the taxation of personal property. We are required to determine whether, under the law, a tax was, or ought to have been, levied upon or on account of the mortgage in suit. While maintaining the position which it originally assumed, complainant, upon the rehearing, has presented other considerations opposed to the conclusion stated in the former opinion, which, it is contended, should control the decision.

The law under which complainant is organized provides that real estate owned by it shall be taxed as other real estate in the place where it is situated, "and the residue of its capital shall be taxed as personal property. * * * " 2 Comp. Laws, § 6168.

Appellee contends that upon no proper construction of the law (the law just referred to and the general tax law) can it be held that any particular mortgage owned by it is taxable as a mortgage; that no tax can be levied upon or on account of a mortgage as such, when the mortgage is held by a trust company or, for that matter, by a bank. The argument is that the capital (and surplus) of such an institution is, at least when the capital is not impaired, the difference between its resources and its liabilities, and, after de-

ducting from this difference the value of real estate, what remains is the residue of its capital which, as such residue, is taxed as personal property. It is admitted that the particular mortgage, and all mortgages owned by it, must be taken into account in determining the amount of its assets, and consequently in fixing the tax to be levied, but that it would be a strained construction of the mortgagor's covenant to say a tax upon said residue of capital was levied upon or on account of the mortgage.

It is apparent that a trust company may own (have title to and possession of) property and credits greatly in excess of its capital and surplus, and exclusive of property which it holds in trust for others. The resources of such an institution are not necessarily or usually equal to the capital and surplus. Such companies are required (section 6170) to make reports to the commissioner of the banking department, upon forms prescribed and furnished by him, which shall exhibit in detail the resources, assets, and liabilities; the said reports to be published in a newspaper. If a dividend is declared, it must also be reported, together with any amount carried to surplus fund and the amount of net earnings in excess thereof. From these and other provisions of the statute, as well as from common knowledge, it is apparent that the word "capital," as employed in the statute in section 6168, does not necessarily mean all the property owned by the corporation. The law under which complainant is organized does not contemplate the listing and taxation of particular items of personal property in which its capital may be invested. Whether capital is impaired may be, and usually is, determined by a comparison of resources with liabilities; and capital, within the meaning of 2 Comp. Laws, § 6168, may be treated as meaning the difference between resources and liabilities, and will include increment usually designated as surplus and undivided profits.

But we must go further before the question in issue can be decided. Either the statute contemplates that the capital and surplus, after deducting the value of real estate, shall be taxed as capital, however invested, and whether invested or not, or else it is important to know, for purposes of taxation, how the capital and surplus is invested. Suppose, for example, that in a particular case it is claimed that a part of the capital of a trust company is invested in bonds of the United States, or in other tax-exempt securities. Suppose that such a concern selects from its resources securities which are exempt from taxation and presents them to the assessing officer as representing the residue of capital and surplus. It is obvious that for the purposes of taxation there is a difference between determining by a comparison of resources and liabilities the sum of the capital and surplus and determining the actual investments of capital in securities and other property. An actual case may be presented. In *Union Trust Co.* v. *Detroit Common Council*, 170 Mich. 692 (137 N. W. 122), it appeared that the complainant sought to have deducted, from the sum of its apparent residue of capital, surplus, and undivided profits, more than a half million dollars represented by mortgages upon which it had paid to the county treasurer the specific tax under the provisions of Act No. 91, Pub. Acts 1911. It sought to set off against its capital, for purposes of assessment, further sums represented by stocks in other Michigan corporations which it owned. Its contention was allowed. That contention necessarily admitted that the items, the particular securities in which its capital was invested, affected the amount for which its capital should be assessed. The statute treats real estate owned by complainant as an investment of capital. It requires a particular investment of capital in securities to be deposited with the State treasurer. The residue may be variously invested or, at a particular time, may not be invested

at all but be in the form of money. It ought not to be considered at a particular moment as invested in particular securities for one purpose and not so invested for all purposes. And, however invested at a particular time, this residue of capital is equal to the sum of the securities in which it is invested. The amount of the tax upon each item (each dollar) of security is determinable.

Presumptively the mortgage in question represented an investment of complainant's capital. It was a purchase-money mortgage, given upon the sale by it of its real estate. It entered into the residue of its capital, upon which residue it was taxed at a rate exceeding one per cent. Complainant was therefore liable to pay, and did pay, the tax on account of the mortgage, and the covenant of the mortgagor required him to repay the tax. The expression in the former opinion that in 2 Comp. Laws, § 6168, the word "capital" "was used to signify all of the property owned by the corporation, both real and personal, within the meaning of the taxing laws," was perhaps misleading. It was intended to mean no more and no less than has just been stated, namely, that whatever property represents capital stock is the equivalent of capital stock for purposes of taxation. We are impressed that the second reason given in the opinion for declaring the contract usurious, namely, that it might be transferred to another, in whose hands it necessarily would be taxable, and who might enforce the repayment of the tax by the mortgagor, is unsound. It could not be known in what jurisdiction the purchaser would reside nor the rate of taxation the mortgage would bear.

But with the conclusion that the contract in question is usurious, and that the bill must be dismissed we feel compelled to agree.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, STONE, and BIRD, JJ., concurred.